23-1201(L) / 23-1277

_____

# United States Court of Appeals for The Fourth Circuit

_____

Tiffany and Marshall Todman,
*Plaintiffs-Appellees and Cross-Appellants*

v.

The Mayor and City Council of Baltimore,
*Defendant-Appellant and Cross-Appellee*

_____

Appeal from the United States District Court
For the District of Maryland
No. 1:19-cv-03296, Judge Deborah L. Boardman

_____

## Appellees' and Cross-Appellants' Principal and Response Brief

Joseph S. Mack
THE LAW OFFICES OF JOSEPH S. MACK
P.O. Box 65066
Baltimore, MD 21209
joseph@macklawonline.com
(443) 423-0464

Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
cocroinin@zuckerman.com
(410) 949-1169

*Attorneys for Plaintiffs-Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1201__     Caption: __Marshall Todman v. The Mayor and City Council of Baltimore__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Marshall Todman__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Conor B. O'Croinin                    Date:  March 9, 2023

Counsel for: Appellee

**Print to PDF for Filing**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1201          Caption: Marshall Todman v. The Mayor and City Council of Baltimore

Pursuant to FRAP 26.1 and Local Rule 26.1,

Tiffany Todman
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.  Does party/amicus have any parent corporations?    ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Conor B. O'Croinin          Date: March 9, 2023

Counsel for: Appellee

Print to PDF for Filing

# Table of Contents

Statement of Disclosure

Jurisdictional Statement..............................................................................1

Statement of the Issues.............................................................................2

Statement of the Case ...............................................................................4

I.      Legal Background ............................................................................4

    A. Maryland Regulates Residential Evictions. ....................................4

    B. The City Enacts the Abandonment Ordinance. .............................5

        1. The 2007 "Clean Streets Bill.".......................................................6

        2. The Tenant Eviction Work Group ("Working Group")...............8

        3. The Final Product: The Abandonment Ordinance.....................9

        4. The Erroneous Dixon Report.....................................................13

II.     Factual Background ......................................................................13

III.    Procedural History .......................................................................21

    A. The District Court Denies the City's Motion to Dismiss the Todmans' Due Process Claims But Dismisses the Todmans' Takings Claim. ...............................................................................22

    B. The District Court Grants the Todmans Summary Judgment on Liability on their Section 1983 Procedural Due Process Claim....23

    C. The Jury Rejects Mr. Collins' Testimony and Finds the Todmans Had Been Deprived of Personal Property Valued at Tens of Thousands of Dollars and Suffered Distress. ...............................25

    D. The City Appeals Only the District Court's Ruling on Summary Judgment................................................................................26

Summary of the Argument ......................................................................27

I.  Procedural Due Process ..................................................................27

II.  Summary Judgment Procedure .....................................................30

III.  Takings .....................................................................................30

Standards of Review..........................................................................32

Argument..........................................................................................33

I.  The District Court Correctly Concluded That The City Violated The Todmans' Procedural Due Process Rights.............................33

  A. The Todmans Had a Property Interest In Their Personal Possessions. ...................................................................................34

  B. The Todmans' Deprivation was Caused By "Some Form of State Action"—The City's Abandonment Ordinance. ............................39

  C. The Procedures The City Used To Deprive The Todmans of Their Property Were Inadequate or Nonexistent...................................48

    1. The City Provided Inadequate Notice To The Todmans That They Stood to Lose $36,000 Worth of Personal Possessions. ....48

      i.  Supposed Notice from the Abandonment Ordinance Itself..49

      ii. Maryland Statutes and Public Local Laws .........................53

      iii.Informal Notice of Eviction (but not abandonment) from Third Parties. .....................................................................55

    2. The City Provided The Todmans With No Opportunity To Be Heard That They Did Not Intend to Abandon Their Personal Possessions..............................................................................57

      i.  The Private Interests at Stake are Paramount....................58

      ii. The Risk of Error is at its Zenith.......................................59

      iii.The Burden of Some Process is Low. ..................................62

II.    The District Court Properly Granted Summary Judgment on Liability. ...................................................................... 64

III.   The District Court Erred By Dismissing the Todmans' Takings Claim. ...................................................................... 66

    A. The City's Abandonment Law Violates The Takings Clause ........ 66

    B. The District Court's Original Analysis—Which Overlooked A Subsequent Decision By This Court—Was Wrong ........................ 70

    C. The District Court's Amended Analysis Was Also Wrong— Authorization of a Taking Is Enough. ............................................ 73

Conclusion .......................................................................... 76

Statement Concerning Oral Argument ................................. 78

Certificate of Compliance ..................................................... 79

Certificate of Service ............................................................ 80

# Table of Authorities

**CASES**

*111 Scherr Lane, LLC* v. *Triangle General Contracting, Inc.*,
233 Md. App. 214, 163 A.3d 248 (2017) ................................................. 69

*Abbott* v. *Latshaw*,
164 F.3d 141 (3d Cir. 1998) .......................................................... 44, 45

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ........................................................................ 34

*Calder* v. *Bull*,
3 U.S. 386 (1798) ..................................................................... 59, 68

*Carey* v. *Piphus*,
435 U.S. 247 (1978) ........................................................................ 33

*Century 21 Real Estate Corp.* v. *Meraj Int'l Inv. Corp.*,
315 F.3d 1271 (10th Cir. 2003) ......................................................... 66

*Chicago, B. & Q.R. Co.* v. *Chicago*,
166 U.S. 226 (1897) ........................................................................ 66

*Conner* v. *Alltin, LLC*,
571 F. Supp. 3d 544 (N.D. Miss. 2021) ............................................ 49, 50

*Desmond* v. *PNGI Charles Town Gaming, L.L.C.*,
630 F.3d 351 (4th Cir. 2011) ............................................................ 32

*E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ............................................................ 32

*Exxon Co., U.S.A.* v. *Sofec, Inc.*,
517 U.S. 830 (1996) ........................................................................ 46

*Farwell* v. *Un*,
902 F.2d 282 (4th Cir. 1990) ............................................................ 46

*Fuentes* v. *Shevin*,
407 U.S. 67 (1972) .......................................................................... 58

*Fusaro* v. *Howard*,
19 F.4th 357 (4th Cir. 2021) ................................................................. 32

*Helton* v. *Hunt*,
330 F.3d 242 (4th Cir. 2003) ............................................................... 56

*Hemi Group, LLC* v. *City of New York*,
559 U.S. 1 (2010) ................................................................................. 46

*Horne* v. *Dep't of Agric.*,
576 U.S. 350 (2015) ......................................................................... 67, 73

*Iota Xi Chapter Of Sigma Chi Fraternity* v. *Patterson*,
566 F.3d 138 (4th Cir. 2009) ............................................................... 34

*Jo* v. *JPMC Specialty Mortg., LLC*,
131 F. Supp. 3d 53 (W.D.N.Y. 2015) .................................................. 38

*Kaiser Aluminum and Chemical Corp.* v. *Bonjorno*,
494 U.S. 827 (1990) ............................................................................ 41

*Keefe* v. *Adams*,
840 F.3d 523 (8th Cir. 2016) ............................................................... 33

*Khan* v. *Heritage Prop. Mgmt.*,
584 N.W.2d 725 (Iowa Ct. App. 1998) ................................................ 38

*Knick* v. *Twp. of Scott, Pennsylvania*,
139 S. Ct. 2162 (2019) ........................................................................ 67

*Knight* v. *M.H. Siegfried Real Estate, Inc.*,
647 S.W.2d 811 (Mo. Ct. App. 1982) ................................................... 38

*Lavan* v. *City of Los Angeles*,
693 F.3d 1022 (9th Cir. 2012) ............................................................. 34

*Lawson* v. *Union Cnty. Clerk of Court*,
828 F.3d 239 (4th Cir. 2016) ............................................................... 32

*Loretto* v. *Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) ...................................... 23, 39, 59, 67, 68, 70, 71, 72

*Lucas* v. *South Carolina Coastal Council*,
505 U.S. 1003 (1992) ................................................ 22, 39, 70, 71, 72

*Lynch* v. *Household Fin. Corp.*,
405 U.S. 538 (1972) ................................................................58

*Maryland Shall Issue* v. *Hogan*,
353 F. Supp. 3d 400 (D. Md. 2018)................................................22, 23

*Maryland Shall Issue, Inc.* v. *Hogan*,
963 F.3d 356 (4th Cir. 2020) ............................................ 23, 70, 71, 72

*Mathews* v. *Eldridge*,
424 U.S. 319 (1976) .................................................... 29, 57, 58, 59, 63

*McCoy* v. *Town of Pittsfield, NH*,
59 F.4th 497 (1st Cir. 2023) .............................................................65

*Miranda* v. *Garland*,
34 F.4th 338 (4th Cir. 2022).............................................................63

*Mombro* v. *Louis Capano & Sons, Inc.*,
526 F. Supp. 1237 (D. Del. 1981) .................................................61, 62

*Monell* v. *Department of Social Services of the City of New York*,
436 U.S. 658 (1978) ......................................................................46, 47

*Moore* v. *Equitrans, L.P.*,
27 F.4th 211 (4th Cir. 2022).............................................................65

*Mullane* v. *Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..........................................................................48

*Nickens* v. *Mount Vernon Realty Grp., LLC*,
429 Md. 53, 54 A.3d 742 (2012), *holding superseded by statute*, 2013
Md. Laws ch. 515 § 2, at 4690–91.................................................35, 36

*Opperman* v. *Littlejohn*,
54 So. 77 (Miss. 1911).......................................................................37

*Pahls* v. *Thomas*,
718 F.3d 1210 (10th Cir. 2013) .........................................................34

*Paroline* v. *United States,*
  572 U.S. 434 (2014) .............................................................. 46

*Phillips* v. *Washington Legal Found.,*
  524 U.S. 156 (1998) .............................................................. 69

*Portman* v. *Cnty. of Santa Clara,*
  995 F.2d 898 (9th Cir. 1993) ................................................. 34

*Quesinberry* v. *Life Ins. Co. of N. Am.,*
  987 F.2d 1017 (4th Cir. 1993) .............................................. 41

*Ringler* v. *Sias,*
  428 N.E.2d 869 (Ohio Ct. App. 1980) .................................... 38

*Sansotta* v. *Town of Nags Head,*
  724 F.3d 533 (4th Cir. 2013) .......................................... 34, 39

*Snider Int'l Corp.* v. *Town of Forest Heights, Md.,*
  739 F.3d 140 (4th Cir. 2014) ......................................... 48, 57

*Spell* v. *McDaniel,*
  824 F.2d 1380 (4th Cir. 1987) ....................................... 46, 47

*Spring Street Partners-IV, L.P.* v. *Lam,*
  730 F.3d 427 (5th Cir. 2013) ................................................. 66

*St. Bernard Par. Gov't* v. *United States,*
  887 F.3d 1354 (Fed. Cir. 2018) ............................................. 73

*State* v. *Boone,*
  284 Md. 1, 393 A.2d 1361 (1978) ...................................... 5, 36

*Staub* v. *Proctor Hosp.,*
  562 U.S. 411 (2011) .............................................................. 46

*Steinbraker* v. *Crouse,*
  169 Md. 453, 182 A. 448 (1936) ...................................... 35, 68

*Stone* v. *Univ. of Md. Med. Sys. Corp.,*
  855 F.2d 167, 172 (4th Cir. 1988) ........................................ 34

*Stuckey* v. *N. Propane Gas Co.*,
874 F.2d 1563 (11th Cir. 1989) ........................................... 32

*Sutton* v. *City of Milwaukee*,
672 F.2d 644 (7th Cir. 1982) ............................................... 58

*Tyler* v. *Hennepin County*,
598 U.S. 631 (2023) ............................................... 52, 69, 70

*U.S. Dev. Corp.* v. *Peoples Fed. Sav. & Loan Ass'n*,
873 F.2d 731 (4th Cir. 1989) ............................................... 65

*U.S. Mfg. Co.* v. *Stevens*,
17 N.W. 934 (Mich. 1883) ................................................... 38

*United States* v. *Causby*,
328 U.S. 256 (1946) ........................................................... 74

*United States* v. *Swann*,
149 F.3d 271 (4th Cir. 1998) ............................................... 32

*UnitedHealth Group Incorporated* v. *Executive Risk Specialty Ins. Co.*,
870 F.3d 856 (8th Cir. 2017) ............................................... 66

*Washington* v. *Harrison*,
682 S.E.2d 679 Ga. Ct. App. 2009) ...................................... 38

*Wilkinson* v. *Austin*,
545 U.S. 209 (2005) ........................................................... 57

*Zinermon* v. *Burch*,
494 U.S. 113 (1990) ........................................................... 33

*Zissu* v. *IH2 Prop. Illinois, L.P.*,
157 F. Supp. 3d 797 (N.D. Ill. 2016) .................................... 37

**STATUTES**

28 U.S.C. § 1291 .................................................................. 1

28 U.S.C. § 1331 .................................................................. 1

34 R.I. GEN. LAWS ANN. § 34-18-50 .................................... 37

42 U.S.C. § 1983 .......................................21, 23, 27, 28, 30, 33, 34, 67, 76

68 PA. STAT. AND CONST. STAT. ANN. § 250.505a .....................................37

ALA. CODE § 35-9A-423 ...................................................................36

ALASKA STAT. ANN. § 34.03.260(e) ........................................................36

ARIZ. REV. STAT. ANN. § 33-1370(F) .....................................................36

ARK. CODE ANN. § 18-17-913 ..............................................................37

ARK. CODE ANN. § 18-60-310 ..............................................................36

ARK. CODE ANN. § 18-60-310(c) ...........................................................37

COLO. REV. STAT. ANN. § 13-40-122 .......................................................38

CONN. GEN. STAT. ANN. §47a-42(c) ........................................................36

DEL. CODE ANN. tit. 25, § 5715(e) .......................................................36

FL. ST. § 83.62 ........................................................................38

GA. CODE ANN. § 44-7-55(c) ..............................................................38

HAW. REV. STAT. ANN. § 521-56 ...........................................................36

IDAHO CODE ANN. § 6-311C (2007) .........................................................36

IND. CODE ANN. §§ 32-31-4-2 to 32-31-4-5 ................................................37

KAN. STAT. ANN. § 58-2565(d) ............................................................37

LA. CODE CIV. PROC. ANN. art. 4734 ......................................................38

MASS. GEN. LAWS ANN. ch. 239 § 4 ........................................................37

MD. CODE ANN., CTS. & JUD. PROC. § 11-504 ..............................................42

MD. CODE ANN., REAL PROP. § 8-216(b)(2)(i) ...............................................4

MD. CODE ANN., REAL PROP. § 8-216(c) .....................................................4

MD. CODE ANN., REAL PROP. § 8-302 ....................................................... 12

MD. CODE ANN., REAL PROP. § 8-401(d) .................................................. 6

MD. CODE ANN., REAL PROP. § 8-401(f) ................................................... 6

MD. CODE ANN., REAL PROP. § 8-401(f)(1)(i) .................................. 6, 10, 36

MD. CODE ANN., REAL PROP. § 8-402(a)(3)(iii) ........................................ 5

MD. CODE ANN., REAL PROP. § 8-402(b)(1)(i) ........................................ 4

MD. CODE ANN., REAL PROP. § 8-402(b)(1)(ii)(3) ..................................... 4

MD. CODE ANN., REAL PROP. § 8-402(b)(1)(ii)(4) ................................ 4, 61

MD. CODE ANN., REAL PROP. § 8-402(b)(2)(i) ................................ 5, 53, 54

ME. STAT. tit. 14, § 6013 ........................................................................... 37

MINN. STAT. ANN. § 504B.365 ................................................................. 37

MISS. CODE ANN. § 89-7-41(2) .................................................................. 50

MONT. CODE ANN. § 70-24-430 ............................................................... 37

N.C. GEN. STAT. ANN. § 42-36.2 ............................................................. 37

N.D. CENT. CODE ANN. § 47-16-30.1 ...................................................... 37

N.H. REV. STAT. ANN. § 540-A:3(VII) ..................................................... 37

N.J. STAT. ANN. §§ 2A:18-72 through 2A:18-84 ..................................... 37

N.M. STAT. ANN. §47-8-34.1(6)(C) ........................................................... 37

NEB. REV. STAT. ANN. § 69-2303 ............................................................. 37

NEV. REV. STAT. ANN. § 118A.460 ........................................................... 37

OKLA. STAT. ANN. tit. 41, § 130 ............................................................... 37

OR. REV. STAT. ANN. § 90.425 ................................................................. 37

S.C. CODE ANN. § 27-40-710 ....................................................38

S.D. CODIFIED LAWS § 43-32-26 ............................................37

TENN. CODE ANN. § 29-15-124 .............................................37

TEX. PROP. CODE ANN. § 24.0061 ........................................38

UTAH CODE ANN. §§ 78B-6-812(3)(b) and 78B-6-816 .............37

VA. CODE ANN. § 55.1-1255 ....................................................38

VT. STAT. ANN. tit. 12, § 4854a .............................................37

W. VA. CODE ANN. § 55-3A-3(h) ...........................................37

WASH. REV. CODE ANN. § 59.18.312 .....................................37

WIS. STAT. ANN. § 799.45 ......................................................37

WYO. STAT. ANN. § 1-21-1210 ...............................................37

**OTHER AUTHORITIES**

1 W. Blackstone, *Commentaries on the Laws of England* (1753) ...........58

Baltimore City Charter § 6(24) (1949) .....................................55

J. Adams, *A Defence of the Constitutions of Government of the United States of America, in F. Coker, Democracy, Liberty, and Property* (1942) ...................................................................................58

J. Locke, *Of Civil Government* (1924) ....................................58

M. Peter Moser, *County Home Rule—Sharing the State's Legislative Power with Maryland Counties*, 28 Md. L Rev. 327 (1968) .................55

**RULES**

Fed. R. Civ. P. 30(b)(6) ...........................................................53

Fed. R. Civ. P. 56(a) ................................................................32

Fed. R. Civ. P. 56(f) ....................................................... 25, 30, 64, 65

**TREATISES**

10A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2720.1 (4th ed.) ................................................................ 66

52A C.J.S. Landlord & Tenant § 749 ..................................................... 36

BALTIMORE CITY CODE art. 13 § 8A ...................................................... 40

BALTIMORE CITY CODE art. 13 § 8A-1 ................................................... 10

BALTIMORE CITY CODE art. 13 § 8A-2(b) ............................................... 18

BALTIMORE CITY CODE art. 13 § 8A-4 ................................... 6, 10, 11, 21

BALTIMORE CITY CODE art. 13 § 8A-4(a) ............................................... 68

BALTIMORE CITY CODE art. 13 § 8A-4(A) ............................................... 51

BALTIMORE CITY CODE art. 4 § 9-19 ......................................... 53, 54, 55

**CONSTITUTIONAL PROVISIONS**

Md. Const. art. XI-A ............................................................................ 55

U.S. Const. amend. XIV ............................................... 21, 26, 31, 33, 66

## Jurisdictional Statement

The district court had jurisdiction over this case under 28 U.S.C. § 1331. This Court's appellate jurisdiction over Defendant's appeal and Plaintiffs' cross-appeal rests on 28 U.S.C. § 1291.

## Statement of the Issues

Plaintiffs and Appellees, Marshall and Tiffany Todman, were tenants in a leased property in Baltimore City. As a result of an ordinance designed to transfer ownership and possession of tenants' belongings to landlords at the moment the landlord changes the locks during eviction, the Todmans lost nearly all of their possessions. The jury valued those possessions at $36,000. There is no dispute that "[t]he Todmans had packed up their personal property, rented a truck, and had every intention to take all this with them to their new apartment." (City Br. ("Br.") at 41). The questions presented are:

1. Whether the district court correctly entered summary judgment on liability for the Todmans when the City's ordinance undisputedly prevented them from showing they did not abandon their personal property.

2. Whether the district court's grant of summary judgment on liability to the Todmans was procedurally correct.

3. Whether the district court erred by dismissing the Todmans' takings claim on the grounds that the City's ordinance merely authorized

the Todmans' landlord to take possession of the Todmans' personal property but did not mandate it.

**Statement of the Case**

# I. Legal Background

## A. Maryland Regulates Residential Evictions.

The district court accurately summarized State and local law of residential evictions. JA60-62, JA846-850. In Maryland, residential evictions may be conducted only "[i]n accordance with a warrant of restitution issued by a court and executed by a sheriff or constable[.]" Maryland Code, § 8-216(b)(2)(i) of the Real Property ("RP") Article. In fact, Maryland provides a residential tenant with a cause of action against any landlord who takes possession of property from the tenant other than through a warrant of restitution. *Id.*, § 8-216(c).

In a tenant-holding-over scenario, a landlord may obtain a warrant of restitution only after filing a complaint in the District Court of Maryland. RP § 8-402(b)(1)(i). Contrary to the City's statement that a tenant must be personally served in a tenant-holding over case (Br. at 12), a sheriff need not personally serve a tenant, but can affix the summons to the property. RP § 8-402(b)(1)(ii)(3). Service in such a manner is sufficient to "support restitution," RP § 8-402(b)(1)(ii)(4), but does not grant the District Court of Maryland (or landlord-tenant court) personal

jurisdiction over the tenant to award money damages, which it can only do if there is personal service. RP § 8-402(a)(3)(iii).

At a hearing, if the landlord-tenant court finds that: (1) a landlord had previously been in possession of the leased property; (2) the tenancy has ended; (3) a notice to quit had been provided; and (4) the tenant is still in possession, the landlord-tenant court must enter "judgment for the restitution of the possession of [the] premises." *Id*. § 8-402(b)(2)(i). The court then later, upon the landlord's request, issues a warrant of restitution to the sheriff to conduct an eviction.

On the day that a sheriff executes a warrant of restitution, an evicted tenant's belongings are "simply placed on the street at the risk of the tenant." *State* v. *Boone*, 284 Md. 1, 7, 393 A.2d 1361, 1364 (1978). A tenant retains his or her property interest in her personal property. *Id*.

### B. The City Enacts the Abandonment Ordinance.

In 2007, Baltimore City enacted an ordinance for the purpose of (in part): "providing for ***the disposition of certain eviction chattels***; requiring certain notice prior to execution of a warrant of restitution; ***providing for a tenant's right to reclaim property within a certain period*** . . . ." JA310 (emphasis added). That ordinance—the

"Abandonment Ordinance," Baltimore City Code art. 13 § 8A-4, provides in relevant part that:

### § 8A-4. Unclaimed property is abandoned.

(a) In general.
All property in or about the leased premises at the time that the warrant of restitution is executed is abandoned.

(b) No liability.
   Neither the landlord nor someone acting on the landlord's behalf is liable for any loss or damage to abandoned property.

### 1. The 2007 "Clean Streets Bill."

All evictions in Maryland (whether by statutory application or custom) are subject to Maryland Code, § 8-401(f) of the Real Property Article.[1] That statute provides that a court may issue a warrant directing a county official to place a landlord back in possession of the leased premises and "for that purpose **to remove** from the property, by force if necessary, all the furniture, implements, tools, goods, effects or other chattels of every description whatsoever belonging to the tenant." RP § 8-401(f)(1)(i) (emphasis added).

For many years before 2007, Baltimore City landlords would comply with RP § 8-401(f)(1)(i) by removing their tenants' property during

---

[1] RP § 8-401(f) replaced § 8-401(d) pursuant to Maryland Laws 2021 Ch. 746.

eviction (including tenant holding over evictions), but then placing that property on the nearest sidewalk. JA129-130. Tenants could request that the City store their property, but very few ever did. JA180 (Tenants would have had to call 311 even to learn about the option. JA181.)

In 2007, the City considered a bill to address the problem of landlords placing tenants' personal property on the street. The original bill required the landlord to allow a tenant to reclaim his or her property within three days of the eviction. JA283-285. If the tenant failed to claim the property at the conclusion of three days, the property would be deemed abandoned. JA283. The original bill contained notice provisions to ensure that tenants were notified of their reclamation rights. JA283. It required three forms of notice: (1) first-class mail; (2) certified mail; and (3) posting. JA283. The bill did not treat the different forms of evictions differently.

Residents supported the bill. Contained within the City's official bill file are letters from City residents and tenant-associations explaining that the practice of City landlords casting tenants' belongings into the street was humiliating for families. JA287 (Letter from J. Johnson). It turned other residents into "scavengers." JA287. Evicted residents lost

important personal property through this practice. JA289 (Letter from M. Benelli to Councilman Harris). One resident explained how "children's clothing, books, toys, etc. [were] left on the side of the street for anyone to rummage through." JA290-291. Highlighting deficient notice provisions, a reverend wrote to the City to relate a story of a tenant who did not seem to know about his pending eviction. JA293.

### 2. The Tenant Eviction Work Group ("Working Group").

After the original bill was proposed by a member of the City Council, the City Solicitor assembled a working group to revise the bill. JA107. The working group was headed by then City Solicitor George Nilson. JA155. Active members included Kathleen Kelly Howard, who participated on behalf of the Maryland Multi-Housing Association ("MMHA"). JA159.

On behalf of the MMHA, Ms. Howard suggested sweeping revisions to the Clean Streets Bill. JA295. At one point during the legislative process, former Solicitor Nilson complained to Ms. Howard about the revisions proposed by "[r]epresentatives of the landlord community." JA300. Those revisions eliminated any period for a tenant to reclaim his or her property. JA300. Mr. Nilson explained that "notice and brief retention is,

of course, the guts of the proposed bill." JA300. Despite his concerns, Mr. Nilson assured Ms. Howard that he could "close this deal to your 'satisfaction.'" JA173, JA305.

Ms. Goslee, another participant, also suggested significant revisions. Although one of the two main objectives of the original bill was to provide tenants with notice of an eviction, JA194, Ms. Goslee proposed exempting certain kinds of evictions from all notice provisions, JA219-220, JA307. Ms. Goslee suggested, and the working group agreed, to exempt certain evictions from the notice requirements even though the nature of an eviction has nothing to do with the nature of the tenant's personal property in the dwelling. JA222. When asked for an explanation of why tenant holding over cases or breach of lease cases would be excluded from the notice requirements, the City could not provide any explanation. JA225-228.

### 3. The Final Product: The Abandonment Ordinance.

The ordinance was signed by then-Mayor Sheila Dixon on August 14, 2007. JA310. The official version of the ordinance is the one signed by the City Council members, the City Council President, and the Mayor. JA110. This version contains a purpose statement at page 1, which

explains the overall purpose of the law. JA112. As noted, the expressed purpose of the ordinance is to, among other things, provide for: (1) "disposition of certain eviction chattels"; (2) "a tenant's right to reclaim property within a certain period"; and (3) a process by which "unclaimed property is deemed abandoned under certain circumstances." JA310.

The City continues to view this purpose statement as accurate. JA146-147. It is not. The final version of the Eviction Chattels Law or Abandonment Ordinance does not actually address "eviction chattels," because there can be no such thing under the Abandonment Ordinance. Nor does the ordinance have anything to do with "unclaimed property" or a "tenant's right to reclaim property."

***Disposition of Eviction Chattels.*** "Eviction Chattels" is defined in § 8A-1 as "property removed from a leased dwelling under a warrant of restitution." JA310. Property is not considered "Eviction Chattel" until it has crossed the threshold. JA116. That definition is consistent with State law. RP § 8-401(f)(1)(i). But under § 8A-4, all property is "abandoned" as soon as the landlord reestablishes possession over the leased premises. JA211. That is accomplished instantaneously (before any of the tenant's

property is removed) by changing the locks. JA130, JA206. So under the terms of the Abandonment Ordinance, there can never be "eviction chattels"—all of the tenants' belongings are transferred to the landlord before anything leaves the rental property.

***Tenant's Right to Reclaim.*** There is no dispute that the ordinance provides no right of reclamation.

***Unclaimed Property.*** The real purpose of the ordinance is not to deem "unclaimed property abandoned," but rather to transfer possession and ownership of the tenants' personal property to the landlord. JA148. While Section 8A-4 is titled "Unclaimed property is abandoned," the provision itself does not deal with "unclaimed property." Nor does it pertain to "abandoned property" in any sense of that phrase. As the City has explained, the tenants' property is deemed abandoned for a fleeting moment. JA211. Possession, in the City's words, "shifts ***immediately*** over to the landlord at the execution of the warrant" and the tenant's belongings become—at that moment in time—"the property owner's property." JA211-212 (emphasis added). Abandonment, therefore, is a legal device intended by the City to transfer ownership of the tenants' property to the landlord—instantaneously. JA132.

11

Said another way: the real purpose of the law is not to deem unclaimed property abandoned. Rather, it is to transfer ownership of property from A (the tenant) to B (the landlord). JA132, JA135. As soon as the landlord changes the locks on the dwelling, everything "in or about" the property becomes his. JA149. At that point in time, the landlord can do whatever he likes with the property, except place it on public property. JA149. The landlord can take it to a pawn shop. JA150. He can attempt to sell it back to the tenants. JA150. If a landlord is owed back rent, he can hold onto the tenants' personal property and exchange it for the back rent owed (otherwise known as "distress for rent"). JA150.[2]

Although the City received numerous reports about the original Clean Streets Bill and letters from constituents, no hearings were held on the version of the bill created by the working group, which eventually became the Abandonment Ordinance. JA244. And as shown by an erroneous publication by the Mayor's Office, there was deep confusion among City officials about the law the working group had in fact devised.

_____

[2] In this respect, the ordinance is inconsistent with Maryland Code, § 8-302 of the Real Property Article. That statute provides that "[d]istress for rent is an action at law and shall be brought as provided in this section."

### 4. The Erroneous Dixon Report.

After Mayor Dixon signed the bill in August 2007, she released a report on her website praising the new ordinance. JA321. The report indicated that the new law was enacted because under the former practice "Tenants are left with little chance to claim their belongings. . . ." JA323. To bring dignity to the eviction process, the Mayor's Office believed that the new law would provide tenants a "five-day advance notification and [that they would] have the opportunity to keep their belongings in covered storage for three days after the eviction for a modest cost." JA323.

Mr. Nilson, who agreed to remove the reclamation provisions at the request of City landlords, promptly advised the Mayor's Office to rescind the erroneous notice. JA234.

## II.   Factual Background

The Todmans rented property from Brock Collins: 4214 Ridgewood Ave, 1st Floor, Baltimore, Maryland ("Leased Premises"). JA327. On May 13, 2019, Mr. Collins filed a tenant holding over action against the Todmans in the District Court of Maryland, Case No. 010100110942019 (the "Tenant Holding Over Action"). The Todmans were served in the

Tenant Holding Over Action via posting on the Leased Premises, rather than in-person service. JA378.

A hearing was held in the Tenant Holding Over Action on July 2, 2019 (the "Hearing"). JA41. The judge opened the Hearing by highlighting the summary nature of the proceeding; in particular, that it involved only four discrete issues concerning possession of the premises. JA44. And the judge made clear that "if there are any other issues that you would try to raise, they're not relevant to this situation. Okay? So it's just those four issues." JA44.

The Todmans attended the Hearing and explained to the court that they wanted to leave and had found another place to live, but needed to remain in the Leased Premises until August 2, 2019. JA47-48. The judge explored with Mr. Collins whether Mr. Collins would be willing to agree to a stay of any judgment to give the Todmans enough time to move out. JA50-55.

Mr. Collins expressed a concern about timing, worrying aloud that a stay of a judgment of possession until August 2, 2019 would delay his ability to schedule an eviction if the Todmans later refused to vacate by August 2, 2019. JA50. The judge then asked Mr. Collins if

"hypothetically" in his experience, if he were to "file for an eviction" in two weeks, that the eviction would occur at least two weeks from that date. JA50-51. Mr. Collins responded "correct." JA50. Accordingly, the judge then asked the Todmans if four weeks was sufficient. JA51. Mr. Todman confirmed that it would be. JA51. Mr. Collins agreed to a stay until July 16, 2019, accepting that an eviction could not be scheduled by August 2, 2019. The court summarized the outcome for the Todmans:

> [M]y understanding is that [the Todmans] are consenting to a judgment. And the stay of execution will be until the 16th of July at which point it would still take at least two [additional] weeks . . . to schedule an eviction. Therefore, you would still have your full month before you would be able to do it. Is that correct?

JA55. Mr. Todman again agreed. JA55.

Mr. Collins petitioned for warrant of restitution on July 15, 2019 using Form DC-CV-081, the District Court of Maryland's statewide form. The warrant of restitution issued on July 16, 2019. JA380. Typically, when a landlord-tenant court issues a warrant of restitution, the clerk's office mails copies to the landlord and to the tenants by first class mail. The parties disputed below whether the Todmans received a copy of the executed warrant of restitution. JA328. But for purposes of their motion

for summary judgment, the Todmans assumed this fact in the City's favor.

The notice consists of the Petition of Warrant of Restitution on Form DC-CV-081 with the bottom portion, the Order, stamped as having been approved by a judge. JA382. The Order provides: "The Sheriff/Constable of this Court is ordered to deliver the premises to the Plaintiff (or the Plaintiff's agent or attorney) and, unless local law requires otherwise, to remove from the premises, by force if necessary, all property of the Defendant(s) and any other occupant." JA382. There is also a box, entitled "Notice of Eviction." It states:

> The Court has ordered that you be evicted. If the property is in Baltimore City there are special procedures that apply. See the notice on the back of this form for the special procedures in Baltimore City and for general information related to evictions from properties that are not in Baltimore City. THERE WILL BE NO FURTHER NOTICE."

JA382.

The back of the form, in fine print, then lays out certain information relating to evictions in Maryland. JA383. The top portion states in bold that it "DOES NOT APPLY TO BALTIMORE CITY." It indicates that "The Court has ordered enforcement of the judgment for possession

which has been entered against you. This means that you can be forcibly removed from the premises at any time after the date of this order, **without warning!** THERE WILL BE NO FURTHER NOTICE."

In contrast, the section of the form dealing with evictions occurring in Baltimore City does not warn that the eviction could happen any time after the date of the order without warning or further notice. Instead, it begins: "The landlord in a failure to pay rent case must provide notice to the tenant of the first scheduled eviction date in two separate ways…." JA383.[3]. The form goes on at length regarding the notice provisions for failure to pay rent cases. But it does not indicate that those notice provisions are inapplicable in other forms of eviction, such as tenant holding over cases. The form further states:

> **On eviction day any personal property left in or around the rental unit is considered abandoned.** When the sheriff returns possession of the rental property to the landlord, any of the tenant's personal property left in or around the rental unit is considered abandoned. The tenant has no right to the property.

JA383 (emphasis in form). This fine-print notice is the only warning that the City claims the Todmans had that their belongings would be deemed

---

[3]  Cleaner copy available at ECF No. 94-20.

conclusively abandoned if they were not removed from the Leased Premises by the time of the eviction. There is no dispute that the Todmans were not provided the notices that Baltimore City requires be provided to tenants in failure to pay rent cases under Baltimore City Code art. 13 § 8A-2(b) before deeming their belongings to have been surrendered at the time of eviction. JA328.

After Mr. Collins filed the Petition for Warrant of Restitution, the eviction scheduling process moved faster than anticipated. There is no dispute that the Todmans were not provided with any notice from the City, the courts, or the sheriff that the eviction was being scheduled two days earlier than they had been told was possible at the Hearing. JA328.

Mr. Collins claimed, and the Todmans disputed, that on some date that Mr. Collins could not recall before the eviction, while he was at the Leased Premises mowing the lawn, he told Mr. Todman that the eviction had been scheduled for July 31, 2019. JA356-360. Mr. Collins claimed that this interaction ended in yelling. JA356-369. Mr. Todman denied this conversation occurred. JA328.

On July 30, 2019, Mr. Todman reserved a moving truck for use on Thursday, August 1, 2019. JA385-386. On the morning of Wednesday,

July 31, 2019, the Todmans left their home to go to work as normal. JA328. Mrs. Todman's mother, Sheila Chaney, who had been living with Todmans after she suffered a stroke, was at home at the Leased Premises. JA328-329. Mr. Collins appeared at the Leased Premises with a Sheriff's deputy. JA328-329. The deputy directed Ms. Chaney to leave the Leased Premises. Mr. Collins took possession of the Leased Premises and instantaneously acquired ownership over all of Ms. Chaney's and the Todmans' personal property that was "in or about" the Leased Premises (including a motorcycle). Mr. Collins then sent the following text message to Mr. Todman stating that "everything in and on the property are my possession per Balt city law." JA390.

Mr. Todman wrote to Mr. Collins: "I'm waiting on a total I trying to get u ur money." JA391. Mr. Collins responded at 5:30 PM that same day demanding $5,800 for return of the Todmans' personal property. JA391-392. Mr. Todman inquired as to how Mr. Collins came up with the $5,800 figure. JA392. Mr. Collins responded that same day by writing: "Let me know whn u [sic] will have 5800 cash before Saturday and we're done with each other as long as there are no more problems[.]" JA393.

On Friday, August 2, 2019, Mr. Todman texted Mr. Collins that he could not come up with $5,800 in a day, writing that he was just trying to pay Mr. Collins and get his belongings back. JA395. Mr. Collins responded by text the same day, asking when Mr. Todman would have more money. JA395. Mr. Todman responded the next day: "That's all I got I'm tapped out I trying to get my things and be done." JA395-396. Mr. Collins responded in relevant part: "I'm willing to accept a payment today until you get the rest of it but I hve [sic] to have it today. Let me know this morning because I'm losing money every day that stuff is on there." JA396. Mr. Todman responded the next morning, August 3, 2019: "Look got 3100 that's all I have I'm trying to give you that and get my stuff. I can come up with no more I been trying." JA396. Mr. Collins responded by asking how much more, between the Todmans and Ms. Chaney, Mr. Todman could come up with "this coming week" but also insisted on a payment that day. JA397.

Unwilling to make a ransom payment without a promise of the return of their belongings, the Todmans did not pay the $5,800 demanded by Mr. Collins. Their communications ended on August 9, 2019 following a text message from Mr. Todman to Mr. Collins: "I need my belongings

today if I owe u money we can figure that out on the back end but need my belongings." JA400. Mr. Collins did not respond. JA329.

Although the Todmans and Mr. Collins had a number of disputes regarding what belongings of the Todmans were still at the Leased Premises at the time of the eviction, all of which were eventually decided by a jury in favor of the Todmans, JA16, there was no dispute at summary judgment that at least some of the Todmans' personal belongings were at the Leased Premises at the time of the eviction and that Mr. Collins asserted ownership over them as a result of § 8A-4, JA856-857.

As a result of the forced abandonment of their personal property, the Todmans lost—and Mr. Collins gained—clothing, furniture, electronics, kitchenware, jewelry, family photos, recreational items, and the ashes of Ms. Todman's grandfather. Most was never returned.

## III. Procedural History

The Todmans filed a lawsuit in the district court against the City and Mr. Collins on November 15, 2019. JA3. The Todmans sought damages from the City under 42 U.S.C. § 1983, a declaratory judgment against all parties that the Abandonment Ordinance is unconstitutional under the Due Process Clause of the Fourteenth Amendment and the Takings

Clause of the Fifth Amendment, and damages under various state-law claims against Mr. Collins. JA32-39. In response to the Todmans' action, Mr. Collins returned some of the Todmans' belongings on January 3, 2020, and the Todmans filed an Amended Complaint reflecting that development on January 17, 2020. JA5, JA31.

### A. The District Court Denies the City's Motion to Dismiss the Todmans' Due Process Claims But Dismisses the Todmans' Takings Claim.

The City moved to dismiss the Todmans' complaint. The district court denied the City's motion, finding that the Todmans had adequately alleged violations of procedural and substantive due process. JA71-72.

But the district court dismissed the Todmans' Fifth Amendment takings claim on the ground that a law that allows a third party to take possession of property could constitute a taking only if it involved real property. The district court based that holding on the trial court's decision in *Maryland Shall Issue* v. *Hogan*, 353 F. Supp. 3d 400, 413 (D. Md. 2018). In that opinion, the district court rejected a takings claim involving personal property by reasoning that per se takings under *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003 (1992) ***as well as***

*Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), "are limited to real property." 353 F. Supp. 3d at 413.

At the time of the district court's decision, however, this Court had issued its own decision in *Maryland Shall Issue, Inc.* v. *Hogan*, 963 F.3d 356 (4th Cir. 2020). In that decision, this Court made clear that *Loretto's* holding, in fact, does apply to both real property and personal property. A taking occurs under *Loretto* "when a regulation authorizes a third party to physically take property. . . ." *Maryland Shall Issue*, 963 F.3d at 365.

Because the district court had overlooked this Court's decision in *Maryland Shall Issue*, the Todmans moved for reconsideration. That prompted the district court to modify its reasoning. It held that a taking had not occurred because the City ordinance merely authorized a landlord to take the tenant's property, but it did not mandate that transfer. JA82-84.

### B. The District Court Grants the Todmans Summary Judgment on Liability on their Section 1983 Procedural Due Process Claim.

After the close of discovery, the parties cross moved for summary judgment. The Todmans sought summary judgment regarding the invalidity of the Abandonment Ordinance under the due process clause.

The City sought summary judgment on the basis that the Abandonment Ordinance did not violate the Constitution.

During the hearing on the motions for summary judgment, the district court asked counsel for the City: "if I were to find the ordinance was unconstitutional, how would that affect the 1983 claim? Where would we go from there?" Counsel for the City responded: "I think we would have to proceed to a jury trial on damages." JA778. The City then noted that the City disputed what belongings, "if any," the Todmans had lost in the eviction. JA778. The district court clarified that "it would be a jury trial solely on damages?" The City confirmed "Yes." JA778.

The district court denied the City's motion and granted the Todmans' motion. The court found that as a matter of law, the Abandonment Ordinance violated the Todmans' procedural due process rights. The court explained that "plaintiffs moved for summary judgment only on whether their constitutional rights were violated, but the Court finds they also are entitled to summary judgment on the issue of the City's responsibility for the constitutional violation." JA885. The district court did not reach the issue of substantive due process or the Todmans' facial

challenge to the ordinance because it found that the procedural due process violation was sufficient. JA861.

The City never objected below to the district court's summary judgment ruling or moved for reconsideration. The City did not complain, for instance, that the court had entered judgment based on any alleged lack of notice under Rule 56(f) at any time between the Court's September 29, 2022 ruling and through the January 30, 2023 jury trial, and indeed never raised it at any time prior to its briefing in this appeal.

### C. The Jury Rejects Mr. Collins' Testimony and Finds the Todmans Had Been Deprived of Personal Property Valued at Tens of Thousands of Dollars and Suffered Distress.

The district court held a three-day jury trial from January 30, 2023 to February 2, 2023. JA JA15-16. Throughout this case, the landlord, Mr. Collins, has maintained (among other things) that: (1) on eviction day, the Leased Premises were full of mostly garbage, JA610-611; (2) nearly everything of value had been returned to the Todmans on January 3, 2020, JA402-405; (3) he had returned the ashes of Ms. Todman's grandfather; (4) Marshall Todman acknowledged that anything that hadn't been returned after the eviction was "trash," JA613-614; and (5) Marshall Todman had broken into the Leased Premises shortly after

the eviction and stolen a number of items, including a 65-inch television that previously belonged to him. JA353.

As they have maintained throughout this case, the Todmans explained that they had been deprived of significant personal property, including expensive electronics and clothes, irreplaceable family heirlooms and original (and sole copies) of family photos. JA329.

The jury sided with the Todmans. JA893. The jury found that the City had deprived the Todmans of $36,000 worth of personal property and inflicted substantial dignitary harm on the Todmans. JA893. The City did not file a post-trial motion or otherwise challenge the jury's determinations. The City does not complain about the jury's verdict on appeal.

### D. The City Appeals Only the District Court's Ruling on Summary Judgment.

The City filed a timely notice of appeal on February 21, 2023. JA894. The Todmans filed a timely notice of conditional cross appeal on March 15, 2023, seeking conditional review of the district court's dismissal of the Todmans' takings claim in the event that this Court determines that the Abandonment Ordinance does not violate the due process clause of the Fourteenth Amendment. JA896.

## Summary of the Argument

## I.    Procedural Due Process

The district court correctly entered summary judgment against the City on liability. The district court undertook a painstaking analysis of the elements of a § 1983 procedural due process claim and correctly concluded that the Abandonment Ordinance violated the Todmans' due process rights. The City failed to provide adequate notice to the Todmans that they would be stripped of all legal rights to their personal property at the moment of eviction. And the City provided the Todmans no opportunity to challenge the forced presumption that they intended to hand over all of their worldly possessions to their landlord.

The Todmans' claim meets all three elements of a § 1983 procedural due process claim.

*First*, the Todmans were deprived of a constitutionally cognizable property interest—their ownership interest in their personal possessions. There is no dispute that the Todmans owned the possessions in their rented home at the time of the eviction. And under longstanding Maryland common law, an eviction cannot extinguish a tenant's rights to their personal property.

*Second*, the forced abandonment of the Todmans' personal property was the direct and intended result of the City's ordinance. Accordingly, the district court had no trouble concluding that the constitutional deprivation of the Todmans' property interest was caused by "some form of state action" as required under the second element of a § 1983 procedural due process claim.

*Third,* the City failed to provide adequate notice of the forced abandonment of the Todmans' personal possessions at the moment of eviction. The City's arguments to the contrary lack merit. The Abandonment Ordinance does not clearly apprise tenants that they will lose all rights to any personal property left in and around the leased property on eviction day. What's more, the official version of the ordinance still retains the inaccurate purpose statement proclaiming it provides for a reclamation period. Neither the ordinance or any form parroting the ordinance provides constitutionally adequate notice.

Nor was the City prohibited from providing notice to holding over tenants by Maryland law—an argument the City failed to raise below. Finally, the City cannot escape the lack of procedural notice in the Abandonment Ordinance by pointing to the alleged informal notice

provided by the Todmans' landlord about the date of the eviction. Even if the landlord did happen to tell the Todmans when the eviction was scheduled for, that cannot cure the utter lack of procedural safeguards in the Abandonment Ordinance.

Separately, the City failed to provide the Todmans with a meaningful (or any) opportunity to be heard. The district court thoroughly applied the three-step analysis set out in *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976). Each factor weighs heavily in favor of the Todmans. There are few interests more central than the personal right in property. The risk of depriving individuals of property that they have no intent to abandon is dangerously high. Indeed, Mrs. Todman's mother was at the home at the time of the eviction and had no legal mechanism to challenge the forced abandonment of her and her daughter's possessions that occurred the moment the landlord changed the locks. And as the district court recognized, even modest safeguards, such as a short reclamation period, would reduce the risk of erroneous deprivation with minimal burden to the City. In this case, the slightest amount of process would have avoided a travesty.

## II.    Summary Judgment Procedure

The district court's grant of summary judgment on liability to the Todmans was procedurally correct. The City failed to raise any objection based on Rule 56(f) prior to this appeal. And when questioned by the district court at the summary judgment hearing, the City conceded that should the court find the Abandonment Ordinance unconstitutional, the Todmans' § 1983 claim should proceed to a damages-only jury trial. Having failed to object to the district court's ruling on liability below, the City has waived its objection on appeal.

## III.   Takings

The district court erred by dismissing the Todmans' takings claim. The Takings Clause—which applies equally to personal property as it does to real property—protects individuals from government action that strips them of their property and allows a private party to obtain ownership. That is precisely what the Abandonment Ordinance does. The City rewrites the definition of abandonment by declaring tenants' private property "abandoned" simply by virtue of it being in or around the leased premises at the time of the eviction even when there is objective evidence—as here—that the tenants had *no* intent to abandon their property. Binding precedent from this Court makes clear that the

Abandonment Ordinance—whose very purpose is to encourage the appropriation of tenants' property by their landlords—runs headlong into the Takings Clause. As the City explained, the Abandonment Ordinance was designed to transfer ownership of the tenant's personal property to the landlord immediately upon execution of the warrant of restitution. That is a taking and the district court erred when it concluded otherwise.

In sum, the Court should affirm the district court's grant of summary judgment to the Todmans on the question of liability and affirm the district court's denial of summary judgment to the City. In the event that this Court determines that the Abandonment Ordinance did not violate the due process clause of the Fourteenth Amendment, or that the Todmans were not entitled to summary judgment on liability, the Court should find that the Abandonment Ordinance violates the takings clause of the Fifth Amendment.

## Standards of Review

This Court reviews "de novo a district court's disposition of cross-motions for summary judgment." *Fusaro* v. *Howard*, 19 F.4th 357, 366 (4th Cir. 2021). The same standard applies to this Court's review of a motion to dismiss. *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond* v. *PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011). Under that standard, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lawson* v. *Union Cnty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Rule 56(a)). Courts are not limited to "the evidence available when the motion was made." *Stuckey* v. *N. Propane Gas Co.*, 874 F.2d 1563, 1567 (11th Cir. 1989). Additionally, this Court "may affirm the district court's judgment for any reason supported by the record, even if it is not the basis that the district court used." *United States* v. *Swann*, 149 F.3d 271, 277 (4th Cir. 1998).

## Argument

## I.  The District Court Correctly Concluded That The City Violated The Todmans' Procedural Due Process Rights.

The City's ordinance, which deprives tenants of notice that their personal property is at risk and which deems their property to be abandoned without any opportunity to contest that conclusion, violates the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause guarantees that no person shall be "deprive[d] of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Section § 1983, in turn, provides a cause of action for damages against certain officials or municipalities who violate constitutional or other federally protected rights. "A § 1983 action may be brought for a violation of procedural due process[.]" *Zinermon* v. *Burch*, 494 U.S. 113, 125 (1990). The Supreme Court has explained that "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." *Carey* v. *Piphus*, 435 U.S. 247, 266 (1978). *Accord Keefe* v. *Adams*, 840 F.3d 523, 541 (8th Cir. 2016).

"The elements necessary to establish a § 1983 . . . violation 'will vary with the constitutional provision at issue.'" *Pahls* v. *Thomas*, 718 F.3d

1210, 1225 (10th Cir. 2013) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 676 (2009)). A § 1983 procedural due process claim has three elements. *Sansotta* v. *Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). *Portman* v. *Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

First, the plaintiff must show that she was deprived of a constitutionally cognizable interest in life, liberty, or property. *Iota Xi Chapter Of Sigma Chi Fraternity* v. *Patterson*, 566 F.3d 138, 145 (4th Cir. 2009). Second, the plaintiff must show that the deprivation of that interest was caused by "some form of state action." *Id.* (quoting *Stone* v. *Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). Third, the plaintiff must demonstrate that "that the procedures employed were constitutionally inadequate." *Patterson*, 566 F.3d at 145.

### A. The Todmans Had a Property Interest In Their Personal Possessions.

The Todmans possessed a protected property interest in their belongings at the time of their eviction. *See Lavan* v. *City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012). At common law, landlords were required to keep a tenant's belongings safe after an eviction and make reasonable arrangements to allow a tenant to retrieve them, unless the landlord could meet the high burden of showing that the tenant's conduct

manifested an intent to abandon the property. *Nickens* v. *Mount Vernon Realty Grp., LLC*, 429 Md. 53, 79, 54 A.3d 742, 758 (2012). The Supreme Court of Maryland has confirmed that a tenant retains a protected property interest in their belongings even through an eviction. *Id.*

In *Nickens*, the Court explained that at common law, a landlord evicting tenants had an obligation to take reasonable care with the tenant's belongings after an eviction, and can be sued for conversion if the belongings are not returned to the tenant. The Court confirmed that a tenant's personal property that was present in a home at the time of a post-foreclosure eviction was not automatically deemed abandoned. Rather, analysis is required as to whether "the owner of the personalty manifested an intent to walk away 'with no intention to again claim [the personalty] or exercise' his rights of ownership over his personal property." *Id.* at 78, 54 A.3d at 757 (quoting *Steinbraker* v. *Crouse*, 169 Md. 453, 458, 182 A. 448, 450 (1936)).

In the absence of that manifestation, "[d]isposition of the personalty found [in a home after an eviction] is also held to a standard of reasonableness, and those actors may be liable for the disposition of the

personalty that is not accomplished in a reasonable way." *Id*. at 79, 54 A.3d at 758. *Accord* 52A C.J.S. Landlord & Tenant § 749.

In Maryland, as in many States, this common law duty of a landlord has been addressed by statute. The applicable statute provides that the tenants' belongings are to be removed from the premises at the time of the eviction. RP § 8–401(f)(1)(i). Yet tenants do not lose their interest in any personal belongings left at their home after being evicted. *Boone*, 284 Md. at 8, 393 A.2d at 1365 (a tenant who still has belongings in an apartment at the time of his eviction does not relinquish his possessory rights).

That appears to be true of every other State in the nation. Thirty-five States and the District of Columbia have statutes requiring that tenants' belongings must be stored for some amount of time after an eviction and allowing the tenant to retrieve those belongings.[4] Contrary to the City's

---

[4] See ALA. CODE § 35-9A-423 (14 days); ALASKA STAT. ANN. § 34.03.260(e) (at least 15 days); ARK. CODE ANN. § 18-60-310 (stored until final determination by court); ARIZ. REV. STAT. ANN. § 33-1370(F) (14 days); CAL. CIV. PRO. CODE §1174(h) (at least 18 days); CONN. GEN. STAT. ANN. §47a-42(c) (stored in a publicly maintained storage facility for at least 15 days); DEL. CODE ANN. tit. 25, § 5715(e) (7 days); D.C. Code Ann. § 42-3505.01a(d)(2) (7 days); HAW. REV. STAT. ANN. § 521-56 ("Before selling or donating such personalty, the landlord shall make reasonable efforts to apprise the tenant ..."); IDAHO CODE ANN. § 6-316(2) (3 days); IND. CODE

assertion in its brief, (Br. at 17), this includes Arkansas. ARK. CODE ANN. § 18-17-913 provides that in residential evictions, the sheriff must proceed as provided in ARK. CODE ANN. § 18-60-310(c), which in turn provides that an evicted tenant's belongings must be removed to a place of storage "until a final determination by the court." At least four States still follow the common law.[5] Two States do not appear to have a statute

ANN. §§ 32-31-4-2 to 32-31-4-5 (landlord must obtain court order to remove tenants' belongings, and then belongings are moved to storage for at least 90 days); KAN. STAT. ANN. § 58-2565(d) (30 days); ME. STAT. tit. 14, § 6013 (at least 7 days); MASS. GEN. LAWS ANN. ch. 239 § 4 (officer takes tenants' belongings to public storage, which must keep the belongings up to 6 months); MINN. STAT. ANN. § 504B.365 (60 days); MONT. CODE ANN. § 70-24-430 (at least 10 days); NEB. REV. STAT. ANN. § 69-2303 (at least 7 days); NEV. REV. STAT. ANN. § 118A.460 (30 days); N.J. STAT. ANN. §§ 2A:18-72 through 2A:18-84 (30 days); N.H. REV. STAT. ANN. § 540-A:3(VII) (7 days); N.M. STAT. ANN. §47-8-34.1(C) (3 days); N.C. GEN. STAT. ANN. § 42-36.2 (7 days); N.D. CENT. CODE ANN. § 47-16-30.1 (28 days); OKLA. STAT. ANN. tit. 41, § 130 (30 days); OR. REV. STAT. ANN. § 90.425 (15 days); 68 PA. STAT. ANN. § 250.505a (10 days from notice with ability for tenant to request an additional 30 days); 34 R.I. GEN. LAWS ANN. § 34-18-50 (belongings removed by sheriff can be recovered upon paying costs of moving them); S.D. CODIFIED LAWS § 43-32-26 (30 days); TENN. CODE ANN. § 29-15-124 (moved to public storage facility at option of tenant); UTAH CODE ANN. §§ 78B-6-812 (3)(b) and 78B-6-816 (at least 15 days); VT. STAT. ANN. tit. 12, § 4854a (15 days); WASH. REV. CODE ANN. § 59.18.312 (30 days); W. VA. CODE ANN. § 55-3A-3(h) (30 days); WIS. STAT. ANN. § 799.45 (moved to public storage or stored by landlord); WYO. STAT. ANN. § 1-21-1210 (7 days).

[5] IL - *Zissu* v. *IH2 Prop. Illinois, L.P.*, 157 F. Supp. 3d 797, 802 (N.D. Ill. 2016); MS - *Opperman* v. *Littlejohn*, 54 So. 77, 78 (Miss. 1911); MO -

or modern caselaw on the topic, but presumably follow the common law.[6] Finally, the remaining nine States, like Maryland, provide that a tenant's belongings are to be set out of the leased premises upon an eviction.[7]

Thus, a landlord is not permitted simply to keep a tenant's belongings at the time of the eviction without any ability for the tenant to recover them. And so the Todmans had a protected property interest in their personal possessions at the time that the City's Abandonment Ordinance caused their deprivation.

---

*Knight* v. *M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 814 (Mo. Ct. App. 1982); NY - *Jo* v. *JPMC Specialty Mortg., LLC*, 131 F. Supp. 3d 53, 56-57 (W.D.N.Y. 2015).

[6] Kentucky and Michigan, but Michigan does have a 136-year-old case following the common law approach that still appears to be good law. *U.S. Mfg. Co.* v. *Stevens*, 17 N.W. 934, 936 (Mich. 1883).

[7] COLO. REV. STAT. ANN. § 13-40-122; FLA. ST. ANN.§ 83.62; GA. CODE ANN. § 44-7-55(c) (*see also Washington* v. *Harrison*, 682 S.E.2d 679, 683 (Ga. Ct. App. 2009) (landlord liable for conversion if landlord does not set out tenant's belongings); *Khan* v. *Heritage Prop. Mgmt.*, 584 N.W.2d 725, 730 (Iowa Ct. App. 1998); LA. CODE CIV. PROC. ANN. art. 4734; *Ringler* v. *Sias*, 428 N.E.2d 869 (Ohio Ct. App. 1980); S.C. CODE ANN. § 27-40-710 (set out property must be left for at least 48 hours or until normal trash pickup); TEX. PROP. CODE ANN. § 24.0061 (officer has discretion to move belongings to a container and then dispose of them after a reasonable time); VA. CODE ANN. § 55.1-1255 (set out for at least 24 hours).

## B. The Todmans' Deprivation was Caused By "Some Form of State Action"—The City's Abandonment Ordinance.

To meet the second element, the Todmans were required to show that the deprivation of their property interest was caused by "some form of state action." *Sansotta*, 724 F.3d at 540. As this Court explained in *Sansotta*, "[t]hat deprivation can be by physical appropriation," *id.* (citing *Loretto* v. *Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 435 (1982) (finding a deprivation where law allowed a *private third party* to take possession of the plaintiff's property)), "or by a regulation that deprives an owner of all economically valuable uses of the land, *Lucas* v. *S.C. Coastal Council,* 505 U.S. 1003, 1019 (1992)." *Id.*

The district court had little trouble concluding that the City "caused the deprivation of the plaintiffs' ownership interest in their possessions." JA862. Despite the City's protestations, this case presents no serious issues of causation. As the district court observed, the Todmans were deprived of their property precisely because the City intended its Abandonment Ordinance to deprive tenants of their property at the moment of eviction. JA862. It was not a fortuity that the Abandonment Ordinance worked just as it was intended.

Similarly, there can be no question that this result was foreseeable. It was the exact consequence called for by the ordinance. This is not a situation where the Todmans were claiming some potentially remote injury that could create a jury question regarding proximate causation, such as the loss of a job because of losing a work computer in an eviction. Instead, there is a full and direct fit between the loss of the Todmans' belongings and operation of the Abandonment Ordinance. The second element was met.

In arguing otherwise, the City contends that the district court would have found a due process violation even "if the City had not enacted § 8A [the Abandonment Ordinance]." Br. 32. Not so. If the City had not distorted the common law concept of abandonment, the Todmans' landlord would have had no claim to the Todmans' valuable personal property.

The City disclaims any responsibility whatsoever to provide due process to tenants whose personal property rights it destroys by characterizing its Abandonment Ordinance as merely a "possible negative post-judgment consequence to an adjudicated judgment." Br. 32. In that vein, the City likens the Todmans' instantaneous loss of $36,000

worth of personal property following a limited *in rem* judgment to imposing postjudgment interest on a monetary, *in personam* judgment. Br. 33. As an initial matter, nothing about a tenant holding over action has anything to do with a tenant's intent to surrender his or her personal property rights.

And even putting that aside, the City's postjudgment analogy is far off the mark. "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Quesinberry* v. *Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (quoting *Kaiser Aluminum and Chemical Corp.* v. *Bonjorno*, 494 U.S. 827, 835 (1990)). In other words, postjudgment interest statutes ensure that the judgment creditor receives the full value of the judgment awarded by the court following full and complete compliance with the due process clause.

The Todmans' loss of their personal property could not be more different. Unlike the holder of a money judgment, the Todmans' landlord was never awarded the Todmans' personal property through any kind of hearing, trial, or judicial proceeding. And the Todmans never had an

opportunity to contest their supposed abandonment. Rather than ensuring that judgment creditors are not deprived the full present-day value of their judgments, the City has deprived tenants (such as the Todmans) of their personal property rights.

Under the City's reasoning, a State could enact a post-judgment statute that says that if a judgment debtor fails to pay a money judgment by a specific date (to which the debtor is not entitled notice), the judgment creditor shall be entitled to immediate possession of all the judgment debtor's personal property, whether in excess of the amount of the judgment or not, and whether the debtor's personal property would otherwise be protected from execution under Md. Code Ann., Cts. & Jud. Proc. § 11-504 (exempting certain possessions from judgment collection such as tools of the trade, pets, and health aids).

Indeed, under the City's reasoning, a government could escape the due process clause altogether by rendering the deprivation of any property interest into a "possible negative post-judgment consequence to an adjudicated judgment." Br. 32. A government could use the fiction of compulsory abandonment to tie the irrevocable loss of welfare benefits, continued government employment, or State licensure to the imposition

of a money judgment and then claim that the process required to impose the money judgment—despite being unrelated—was enough. But that reasoning, like the Abandonment Ordinance itself, is a sham and makes a mockery of due process.

The City also accuses the district court of improperly applying a "but for" causation test. Br. 41. But in doing so, the City doesn't even cite to the district court's analysis of element two of the procedural due process test, JA862, but to a page in the district court's opinion largely devoted to analysis of the Todmans' State law claims against their landlord. Br. 41 (citing JA885). Those claims are not before this Court.

Nor does the City articulate a clear proximate causation standard based on any procedural due process case (by this Court or any other Court). Rather, by pointing to the tangential presence of State actors, the City seeks to distract from its central role in the deprivation of the Todmans' procedural due process rights. And by relying on (fantastical) assertions that the Todmans' landlord told the Todmans when the eviction would occur, the City tries to import a nonexistent contributory negligence defense to the "some form of State action" requirement. But

that defense does not exist. And the City cites nothing to suggest that it does.

And even if there was a contributory negligence defense available to the City, only the City—not the Todmans' landlord—could have afforded the Todmans procedurally-compliant notice or a meaningful opportunity to be heard. There is no dispute that the Todmans never had the opportunity to contest the City-imposed presumption that they had intended to abandon everything they own. Even if there were any doubt about that, the jury clearly rejected the landlord's repeated assertions in this lawsuit that the Todmans did not want to take with them their $36,000 worth of personal property.

The "some form of State action" requirement was intended to ensure that government had at least some connection to the deprivation before imposing an obligation to provide notice and an opportunity to be heard. In *Abbott* v. *Latshaw*, 164 F.3d 141, 145 (3d Cir. 1998), for instance, the Third Circuit considered a plaintiff's claim that his procedural due process rights were violated by a county constable when that constable assisted his ex-wife in seizing the plaintiff's vehicle. Because the constable had used his public authority to help take possession of the

vehicle, *the constable* then became "obligated to notify [the plaintiff] of the seizure in advance and to provide him with a meaningful opportunity to be heard." *Id.* at 147. It was sufficient that the constable had played a "principal role in the seizure." *Id.* at 147. Similarly, there is no doubt that the City played the principal role in the Todmans' deprivation. It is for that reason that it was the City, and no one else, that took on the obligation to provide the Todmans with notice and an opportunity to be heard.

Even if the City's vague articulations of proximate cause formed the correct standard here, proximate cause was met. Because there is no dispute that the Todmans did not intend to abandon their $36,000 worth of personal property or surrender it to their landlord, and because there is no dispute that the Todmans intended to promptly remove their personal property from the Leased Premises, nothing could possibly have disrupted the unbroken sequence between the operation of the Abandonment Ordinance and the constitutional deprivation that the Todmans suffered.

"Proximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only

those 'link[s] that [are] too remote, purely contingent, or indirect.'" *Staub* v. *Proctor Hosp.*, 562 U.S. 411, 419 (2011) (quoting *Hemi Group, LLC* v. *City of New York*, 559 U.S. 1, 9 (2010)). "A requirement of proximate cause thus serves, *inter alia,* to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline* v. *United States*, 572 U.S. 434, 445 (2014) (citing *Exxon Co., U.S.A.* v. *Sofec, Inc.*, 517 U.S. 830, 838–839 (1996)). "If the facts bearing upon an issue of legal cause are not in dispute, that issue is for the court." *Farwell* v. *Un*, 902 F.2d 282, 290 (4th Cir. 1990).

The sole decision the City cites in support of its causation argument is this Court's decision in *Spell* v. *McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). Br. 41. *Spell*, however, does not help the City. First off, *Spell* did not involve a procedural due process claim. Rather, the plaintiff in *Spell* sued the City of Fayetteville after he was brutally assaulted by a municipal police officer. The question there was whether the city was liable for its officer's actions under *Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658 (1978). This Court held that—despite the ***absence of any ordinance*** or express policy that led

to the plaintiff's injuries—the plaintiff satisfied *Monell* by demonstrating municipal liability through deficient training of the officer and a condoned custom of abuse. *Spell*, 824 F.2d at 1391.

In explaining the causation requirement in cases in which a plaintiff seeks to hold a municipality jointly and severally liable for the physical abuse caused by one of its officers, this Court made clear that a municipality can be directly charged with fault when the policy is: "(1) fairly attributable to the municipality as its 'own,'" and "(2) the 'moving force' behind the particular constitutional violation." *Spell,* 824 F.2d at 1387. This Court also recognized that "municipal 'policy' is found most obviously in municipal ordinances[.]" *Id.* at 1385.

Here, the Abandonment Ordinance was enacted by the City, caused the very deprivation at issue, and failed to allow for any official notice or any opportunity for the Todmans' to raise the very contention that no one in this appeal disputes all these years later: that they intended to take their things with them when they moved.

In short, the City was the actual and proximate cause of the Todmans' substantial damages. The district court correctly concluded that the Todmans met element two.

## C. The Procedures The City Used To Deprive The Todmans of Their Property Were Inadequate or Nonexistent.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950). Notice and an opportunity to be heard are two distinct and equally fundamental requirements of due process that are "governed by different standards." *Snider Int'l Corp.* v. *Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014)

### 1. The City Provided Inadequate Notice To The Todmans That They Stood to Lose $36,000 Worth of Personal Possessions.

The City does not dispute that it provided zero notice to the Todmans that their personal possessions were in jeopardy. Indeed, the Abandonment Ordinance does not require notice to a holding over tenant of either the date of the eviction or the fact that the possession over the tenant's property will be transferred instantaneously to the landlord by operation of law.

Instead, the City contends that notice was provided by the Abandonment Ordinance itself or by other parties. Both positions are flawed.

### i. *Supposed Notice from the Abandonment Ordinance Itself.*

The City claims that the Abandonment Ordinance itself provided requisite notice and chastises the Todmans for failing to research the Abandonment Ordinance. Br. 36. First, the City was required to direct notice to the Todmans specifically, not generally through an ordinance. Second, the ordinance, to put it mildly, is a mess. "Confiscatory statutes should be plainly understood by common folks." *Conner* v. *Alltin, LLC*, 571 F. Supp. 3d 544, 552 (N.D. Miss. 2021). The Abandonment Ordinance fails that test.

In *Conner*, the United States District Court for the Northern District of Mississippi confronted a (now superseded) statute that gave landlords the right to seize and keep the property of their tenants during evictions. *Id.* at 547-48. The relevant statute provided that the tenant's personal property "shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant." *Id.* at 551

(quoting Miss. Code Ann. § 89-7-41(2)). That language also appeared in the summons provided to the tenant before the eviction.

The court found that the statute violated the due process clause because it failed to convey the necessary notice to the tenant that "any and all personal property left on the premises at the time of eviction . . . will, in effect, become the personal property of the landlord and that the tenant will have no legal ability whatsoever to compel the return of that property." *Id.* at 553. The court explained that the use of phrase "dispose of" at once confused tenants and empowered landlords. "The statutes thereby create something of a 'perfect storm' of ambiguity by giving landlords *effective* ownership of the tenant's property, while still failing to use terminology actually consistent with full ownership." *Id.* at 554.

If the Mississippi provisions at issue in *Conner* were a perfect storm, the provisions of the Abandonment Ordinance at issue here are a perfect hurricane. To begin with, the official version retains the inaccurate purpose statement that the ordinance provided for "a tenant's right to reclaim property within a certain period." JA310 (the City maintained that this purpose statement at page 1 of the official version is accurate,

JA146). Next, the ordinance defines "eviction chattels," to mean "property removed from a leased dwelling." JA313. That definition is consistent with the usual practice that the landlord will remove the tenant's property during an eviction—not change the locks and assert immediate dominion over them.

To give a concrete example: one of the items that the jury found the Todmans lost was a large, curved television. A reasonable reader of eviction laws in Maryland and the Abandonment Ordinance in particular would conclude that the landlord was required to remove that television from the property and give the Todmans an opportunity to reclaim it. Instead, the way the ordinance works in practice, and the way it worked here, was to give the Todmans' landlord immediate possession over that television without any obligation to remove it from the Leased Premises.

On top of those interpretative problems, the critical language in § 8A-4(A) that "[a]ll property in or about the leased premises at the time that the warrant of restitution is executed is abandoned," is deeply flawed. Nothing in that language clearly indicates to a layperson that the City has warped the common law concept of abandonment. That concept is not only deeply ingrained in law—it is understood widely among the general

populace. https://www.dictionary.com/browse/abandon (defining "abandon" to make a "voluntary decision to give something up"). Abandonment requires intent to surrender. *Tyler* v. *Hennepin County*, 598 U.S. 631, 647 (2023).

Consider a hypothetical: a husband and wife are moving out on eviction day. They have spent hours loading a moving truck. Just before the sheriff arrives to assist with changing the locks, the husband does one last sweep of the property and goes into the bathroom to wash his hands. He takes off his wedding ring and places it on the sink, where he inadvertently leaves it. The landlord changes the locks. Just as the couple is driving away, the wife spots the missing ring; the lightbulb goes off. No one would think that the couple had abandoned the ring. Reading the Ordinance to effect an abandonment is counterintuitive and serves no public purpose whatsoever.

In short, the ordinance itself does not provide adequate notice. And for the same reasons, the form prepared by the Maryland judiciary also fails to convey adequate notice. The district court marched through all the flaws in the form, which the State judiciary modeled (as best it could) on the City's confusing ordinance. JA865-868.

### ii. Maryland Statutes and Public Local Laws

Throughout its brief, the City contends that "Maryland state law expressly prohibits the City from requiring notice of the eviction date in holding over actions." Br. 26. The City claims RP § 8-402(b)(2)(i) and Public Local Law § 9-19 "forbids" notice to tenants. Br. 5. The City's argument should be rejected for at least six reasons.

*First*, the City did not argue below that it was prohibited from giving notice of eviction dates to holding over tenants.

*Second*, nothing in the legislative history of the Abandonment Ordinance suggests that the City ever perceived itself as barred from providing the same notice afforded to holding over tenants that tenants who failed to pay rent receive.

*Third*, when asked at its 30(b)(6) deposition why holding over tenants are treated differently, the City could provide no explanation. JA224-225.

*Fourth*, the City's interpretation of RP § 8-402(b)(2)(i) and Public Local Law § 9-19 is wrong. Section 8-402(b)(2)(i) states that warrants of restitution shall command tenants that they are "forthwith to deliver to the landlord possession [of the leased premises]." "Forthwith" may mean fast, but it does not mean "without notice." Nor does this statute have

anything to do with a notice to be heard concerning a tenant's intent to abandon *personal property*.

The City's interpretation of PLL § 9-19 is similarly flawed. Unlike RP § 8-402(b)(2)(i), Public Local Law § 9-19 does refer to notice—but it creates no prohibition on the kind of notice the City was obligated to provide here. PLL § 9-19 provides as follows:

> Such notice, without any additional notice, shall entitle the landlord to the benefit of the law providing for the speedy recovery of the possession of lands or tenements held over by tenants. (P.L.L., 1860, §888; 1888, §863; 1915, §850; 1927, §850; 1930, §850; 1938, §1131; 1949, §734; 1969, §9-18.) (1898, ch. 123, §850; **Ord. 19-036; Ord. 42-684.**)

"Such notice," includes notice from the landlord as well as a notice to quit to the landlord from the tenant. PLL § 9-19. Nothing about the plain language of this local law prohibited the City from providing the requisite constitutional notice to the Todmans that their personal property was in jeopardy of instantaneous forfeiture. Nor did it prohibit the City from providing notice to the Todmans of the date of their eviction. While this public local law may set a floor of notice required for a landlord to regain possession of the leased property, it did not create a ceiling. Nor did it at

all affect the City's ability to provide notice concerning the tenant's personal property.

*Fifth*, even if the City's hands were actually tied by PLL § 9-19, the City could have amended PLL § 9-19 when it enacted the Abandonment Ordinance. The legislative notes show that the City can *and has* amended PLL § 9-19. Baltimore City has charter home rule authority under Article XI-A of the Maryland Constitution. Since gaining that authority, the City of Baltimore has enjoyed the ability to exercise the full extent of the State's police power within its boundaries. Baltimore City Charter § 6(24) (1949). "A charter county or Baltimore City may enact, repeal or amend local laws dealing with matters falling within their express powers." M. Peter Moser, *County Home Rule—Sharing the State's Legislative Power with Maryland Counties*, 28 Md. L Rev. 327, 333-34 (1968).

*Sixth*, even if either law said what the City now says it means, those were powerful reasons *not* to enact the Abandonment Ordinance in the first place—not excuses for violating the Fourteenth Amendment.

### iii. Informal Notice of Eviction (but not abandonment) from Third Parties.

As the district court observed, "[a] serendipitous procedural safeguard is no safeguard at all." JA869 (citing *Helton* v. *Hunt*, 330 F.3d 242, 248-

49 (4th Cir. 2003) (rejecting argument that a statute authorizing the immediate destruction of personal property, without any procedural safeguards, complied with due process because "the general practice . . . is to obtain a court order before any destruction occurs")). Mr. Collins' alleged happenstance notice to Marshall Todman about the date of the eviction cannot cure the lack of procedural safeguard built into the Abandonment Ordinance.

Remanding this case for a jury trial as to whether Mr. Collins actually told Marshall Todman that the eviction would occur on July 31, 2019 would accomplish nothing. It was the City's obligation to provide notice of the eviction, the prospect of deprivation, and an opportunity to contest the presumption of abandonment. While the Todmans and the district court assumed for purposes of summary judgment that Mr. Collins had the conversation he claimed to have had with Marshall Todman, this Court should not overlook the fact that the jury rejected every other major contention that Mr. Collins has maintained throughout this lawsuit when it found in favor of the Todmans at trial. And the City offers no explanation as to why the Todmans should have credited Mr. Collins over the judge who presided over their landlord-tenant Hearing. In any

event, there is no dispute that Mr. Collins did not notify the Todmans that all their personal belongings would effectively become his at the moment of eviction. Nor is there any dispute that Mr. Collins provided the Todmans with zero opportunity to reclaim their things. Rather, he took them and attempted to extort from the Todmans thousands of dollars for their safe return.

### 2. The City Provided The Todmans With No Opportunity To Be Heard That They Did Not Intend to Abandon Their Personal Possessions.

The Supreme Court has "consistently observed" that notice and an opportunity to be heard "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Wilkinson* v. *Austin*, 545 U.S. 209, 226 (2005).

To determine whether the City had provided the Todmans with a meaningful opportunity to be heard, the district court applied the "familiar three-step inquiry for determining the adequacy of the opportunity to be heard. . . ." *Snider Int'l Corp.*, 739 F.3d at 146, *Mathews*, 424 U.S. at 333, 335. The City does not mention *Mathews* in its brief. But application of the *Mathews* factors makes clear that the district court correctly concluded that "the City did not provide the plaintiffs with

any, let alone an adequate, opportunity to be heard on the forced abandonment of their possessions." JA870.

### i. The Private Interests at Stake are Paramount.

The first factor to consider is "the private interest . . . affected by the official action[.]" *Mathews*, 424 U.S. at 335. In short, the private interests at stake here are substantial.

The Supreme Court has explained that "a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other." *Lynch* v. *Household Fin. Corp.*, 405 U.S. 538, 552 (1972). Property rights are "basic civil rights." *Id.* (citing J. Locke, Of Civil Government 82-85 (1924); J. Adams, A Defence of the Constitutions of Government of the United States of America, in F. Coker, Democracy, Liberty, and Property 121-132 (1942); 1 W. Blackstone, Commentaries, *138-140.). *Accord Fuentes* v. *Shevin*, 407 U.S. 67, 89 (1972); *Sutton* v. *City of Milwaukee*, 672 F.2d 644, 646 (7th Cir. 1982).

This solemnity of the rights at issue in this case is reflected in the jury's decision to award the Todmans $150,000 in emotional distress damages from the loss of $36,000 in personal property, which included

personal items that can never be replaced. Indeed, it is one thing to lose everything you own because of a natural disaster. It is yet another ordeal entirely to be forced to cede everything you own to someone else who can rummage through it, use it, sell it, give it away, destroy it, attempt extortion with it, or taunt you with it. After all, "an owner suffers a special kind of injury when a *stranger* directly invades and occupies the owner's property." *Loretto*, 458 U.S. at 436. It's bad enough that the City forces tenants to abandon valuable and sentimental property: "To require, as well, that the owner permit another to exercise complete dominion literally adds insult to injury." *Id.* That is why, as Chief Justice Chase observed more than 200 years ago, the Constitution prohibits egregious deprivations by legislatures, including "a law that takes property from A. and gives it to B." *Calder* v. *Bull*, 3 U.S. 386, 388 (1798).

The first element weighs overwhelmingly in the Todmans' favor.

### ii. The Risk of Error is at its Zenith.

The second factor is "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

The risk of error could not be higher, as the outcome of this case establishes. The City does not dispute that the Todmans did not intend to abandon their personal property. Yet as the district court observed, the Abandonment Ordinance "provides no legal mechanism by which tenants may reclaim possessions deemed abandoned or otherwise challenge its operation." JA872. This element too weighs heavily, if not dispositively in the Todmans' favor.

For all of the City's reliance on proximate cause—nothing changes the fact that the City provided no means for the Todmans to assert their claim of ownership and reverse the erroneous presumption that they wanted to give up their personal property. *That* failure—the City's failure—was the principal cause of the Todmans' harm. To use an analogy: it is as if a State employee was forced to check a box on her employer's intranet site indicating that she intends to retain her long held position and the intranet site malfunctions at the critical moment, causing the employer to relieve the employee of her position. The employee needs only the slightest amount of process to contest the mistaken presumption that she does not want her job. There is little question that she'd be entitled to it.

The City's argument that the Hearing in the Tenant Holding Over Action afforded the Todmans an opportunity to be heard regarding the disposition of their belongings is false. The limited, *in rem* proceeding in landlord-tenant court concerned only whether Mr. Collins was entitled to possession of the Leased Premises. The judge opened the Hearing by making that very clear, stating that the only issues for the Hearing were the four elements necessary for Mr. Collins to show his entitlement to restitution of possession of the real property at issue in the case. JA44. The Todmans were served only via posting on the Leased Premises, JA378, further making it clear that the district court's jurisdiction only extended to possession of the Leased Premises, not the Todmans' belongings. RP § 8-402(b)(1)(ii)(4). Thus, as the district court found below, "[t]he [Todmans'] eviction hearing was limited to the issue of possession of the leased premises. It did not, and could not have, adjudicated any of the [Todmans'] claims that are now before the Court." JA873.

The U.S. District Court for the District of Delaware addressed a similar statute in *Mombro* v. *Louis Capano & Sons, Inc.*, 526 F. Supp. 1237, 1241 (D. Del. 1981). The statute provided:

> If prior to or upon the tenant's removal (in the course of a summary repossession proceeding)

from said premises, the tenant fails to remove his property or possessions, the landlord shall have the right to remove and store same at tenant's expense for up to a period of 30 days. If at the end of such period the tenant has failed to claim said property and to reimburse the landlord for the expense of removal and storage in a reasonable amount, such property shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant.

*Id.* at 1239. The held that the plaintiff's claims that the statute "provides constitutionally inadequate procedural safeguards is not insubstantial." *Id.* at 1241. In particular, the court criticized the statute because it "leaves open the possibility that a tenant may 'abandon' property in the mistaken belief that his or her landlord will retain the goods until claimed." *Id.* The court observed that "procedures such as notice of the thirty day limitation on storage would not appear to impose a significant fiscal or administrative burden on the State, and would be very likely to prevent erroneous deprivations under Section 5715(d)." *Id.*

The second element goes in the Todmans favor.

### iii.    *The Burden of Some Process is Low.*

The third *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*,

424 U.S. at 335. *Miranda* v. *Garland*, 34 F.4th 338, 364 (4th Cir. 2022). As the district court recognized, "[a] simple reclamation period would not significantly burden any of the City's interests." JA877-879. In what turned out to be an erroneous press release, the Mayor's Office in 2007 praised what it thought was a provision in the Abandonment Ordinance that allowed tenants "the opportunity to keep their belongings in covered storage for three days after the eviction for a modest cost." JA323. The Todmans didn't even need that much time.

To be sure, Ms. Chaney was at the property at the time of the eviction and the Todmans rushed to the scene shortly thereafter. JA328-329. Any minimal opportunity to challenge the forced abandonment of the Todmans' belongings would have sufficed. If the law had been truly designed to clear out the tenant's possessions, as opposed to enriching landlords, then the City should welcome procedures that give tenants the opportunity to remove their things quickly. Any goal to turn back the real property forthwith so the landlord does not lose rental income was not realized in this case. At the time of summary judgment, indeed at the time of trial, the property remained unleased. Following the Todmans' tenancy, the Leased Premises served no other purpose than as a storage

locker for the Todmans' $36,000 worth of personal property—a storage locker that, because of the City's law, the Todmans' could not access.

In sum, the district court correctly granted summary judgment on liability in favor of the Todmans.

## II. The District Court Properly Granted Summary Judgment on Liability.

Once the district court made the determination that the Abandonment Ordinance was unconstitutional, the district court properly granted summary judgment on liability against the City and scheduled a trial on damages.

The City never raised any objection based on Rule 56(f) prior to its briefing in this Court. At the hearing on summary judgment, the Court directly asked "[f]rom your perspective, the city's perspective, if I were to find the ordinance was unconstitutional, how would that affect the 1983 claim? Where would we go from there?" Counsel for the City responded: "I think we would have to proceed to a jury trial on damages." JA778. The City then noted that the City disputed what belongings, "if any," the Todmans had lost in the eviction. JA778. So the district court stated "If anything, okay. So it would be a jury trial solely on damages?" The City simply confirmed "Yes." JA778.

Accordingly, the City's own concession that a finding that the Abandonment Ordinance is unconstitutional would result in a jury trial on damages was appropriate, and its complaint that the district court did exactly as the City stated falls flat. The district court put the City on notice that it could order a trial on damages as conceded by the City. *McCoy* v. *Town of Pittsfield, NH*, 59 F.4th 497, 505 (1st Cir. 2023). The "notice" provided for under Rule 56(f) "need not necessarily be a formal document," but it "must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact." *Moore* v. *Equitrans, L.P.*, 27 F.4th 211, 224 (4th Cir. 2022) (quoting *U.S. Dev. Corp.* v. *Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)). Thus, "it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." *Id*.

There is no question that all material pertinent to the claims under consideration had been submitted to the district court and the record had been fully developed. Every substantive argument advanced by the City in its appeal was raised below and addressed by the district court in its opinion.

Further, the City never raised this issue prior to this appeal, including during the several months between the district court's ruling on summary judgment and the trial. That constitutes waiver. *UnitedHealth Group Incorporated* v. *Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 866 (8th Cir. 2017); 10A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2720.1 (4th ed.) ("if the parties fail to object to the court's *sua sponte* entry of summary judgment, they will be found to have waived their objection on appeal"). *Accord Spring Street Partners-IV, L.P.* v. *Lam*, 730 F.3d 427, 436 (5th Cir. 2013); *Century 21 Real Estate Corp.* v. *Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1276 (10th Cir. 2003).

In sum, the district court's entry of summary judgment complied with Rule 56.

## III.   The District Court Erred By Dismissing the Todmans' Takings Claim.

### A. The City's Abandonment Law Violates The Takings Clause.

The Takings Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause applies to State and local governments through the Fourteenth Amendment. *Chicago, B. & Q.R. Co.* v. *Chicago*, 166 U.S. 226, 239 (1897).

"If a local government takes private property without paying for it, that government has violated the Fifth Amendment" and "the property owner may sue the government at that time in federal court for the 'deprivation' of a right 'secured by the Constitution.'" *Knick* v. *Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019) (quoting 42 U.S.C. § 1983).

The Takings Clause applies to real property and personal property alike. "Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." *Horne* v. *Dep't of Agric.*, 576 U.S. 350, 358 (2015).

The Takings Clause applies when a government exercises its power of eminent domain to take possession of private property. It also applies when a government, through regulation, deprives a property owner of its bundle of rights and allows a private party to take possession of the owner's property. In that situation, "an owner suffers a special kind of injury when a *stranger* directly invades and occupies the owner's property." *Loretto*, 458 U.S. at 436. "To require, as well, that the owner

permit another to exercise complete dominion literally adds insult to injury." *Id.* Indeed, a government's action of depriving a person of her property and allowing another private party to obtain possession is a core evil prohibited by our Constitution. Again, the Constitution prohibits certain fundamental deprivations by legislatures, including "a law that takes property from A. and gives it to B." *Calder*, 3 U.S. at 388 .

There is no question in this case that the City's abandonment law amounts to a taking. The City destroys the tenant's entire bundle of rights by deeming "abandoned" any private property "in or about the leased premises at the time that the warrant of restitution is executed." Baltimore City Code art. 13 § 8A-4(a). In Maryland, as elsewhere, "[t]he rule of law with respect to abandoned property is very simple. Property is abandoned when the owner walks off and leaves it with no intention to again claim it or exercise rights of ownership over it[.]" *Steinbraker* v. *Crouse*, 169 Md. 453, 182 A. 448, 450 (1936).

There is no dispute in this case that Todmans, or tenants in general, did not abandon property by leaving items on real property which they no longer occupy. To the extent there is any dispute about this concept, it is settled by *111 Scherr Lane, LLC* v. *Triangle General Contracting,*

*Inc.*, 233 Md. App. 214, 236, 163 A.3d 248, 261 (2017) (confirming that personal property left on real property is not deemed abandoned at common law).

Under the City's ordinance, the Todmans' property was deemed abandoned, despite all objective evidence to the contrary. The City accomplished this by distorting a deep-rooted concept of ownership, such that it is unrecognizable. Yet "a State [or local government] may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law." *Phillips* v. *Washington Legal Found.*, 524 U.S. 156, 167 (1998).

This concept was illustrated and reaffirmed by the Supreme Court in *Tyler* v. *Hennepin County*, 598 U.S. 631, 646 (2023). In *Tyler*, a county in Minnesota foreclosed on the plaintiff's home for failure to pay $15,000 in real estate taxes. The county sold the home at foreclosure for $40,000 and kept all the proceeds—refusing to return the surplus value to the plaintiff. The county argued that the plaintiff had "constructively abandoned" her home by failing to abide by a reasonable condition of home ownership—the requirement to pay taxes. *Id.*

The Court rejected the County's abandonment argument. "The County cannot frame that failure as abandonment to avoid the demands of the Takings Clause." *Id.* at 647. Like the City here, Hennepin County was not interested in addressing truly abandoned property. Rather, both Hennepin County and the City of Baltimore attempted to distort the concept of abandonment for ulterior purposes—in *Tyler* to collect revenue; here (supposedly) for clean streets. But like the county in *Tyler*, the City in this case cannot sidestep the Takings Clause by mangling the concept of abandonment.

## B. The District Court's Original Analysis—Which Overlooked A Subsequent Decision By This Court—Was Wrong.

The district court dismissed the Todmans' taking claim by citing the trial level decision in *Maryland Shall Issue*. In *Maryland Shall Issue*, plaintiffs challenged Maryland's statutory ban on the possession of rapid fire trigger activators. The plaintiffs contended that the statute effected a per se taking of personal property. This Court rejected that contention. In so doing, the Court set out the framework of per se takings of personal property that must govern here. The Court explained that there are two types of per se regulatory takings: (1) *Loretto* takings and (2) *Lucas*

takings. The Court explained that *Loretto* applies to real and personal property; while *Lucas* applies only to real property. 963 F.3d at 365. The key distinction between *Loretto* and *Lucas* is the act of turning over valuable property to either the government or a third party.

**Loretto *applies to personal property.*** *Loretto* takings, based on *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 436 (1982), apply to real property and personal property alike. As the Fourth Circuit explained, in *Horne* v. *Dept. of Agriculture*, 576 U.S. 350 (2015), the Supreme Court held that "the first type of per se regulatory takings identified in *Loretto*—direct appropriation—applies to personal property." *Maryland Shall Issue*, 963 F.3d at 366 (4th Cir. 2020). These kinds of takings occur "when a regulation authorizes **a third party** to physically take property. . . ." *Id.* at 365 (emphasis added).

**Lucas *applies only to real property.*** In contrast, *Lucas* takings, based on *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1020–27 (1992), apply only to real property. They occur when "regulation denies all economically beneficial or productive use *of land*." *Maryland Shall Issue*, 963 F.3d at 365 (quoting *Lucas*; emphasis supplied by the Fourth Circuit).

The plaintiffs in *Maryland Shall Issue* argued that Maryland's ban on rapid fire trigger devices fell into the second category (*Lucas*), because the statute rendered their personal property worthless. But the Fourth Circuit held that *Lucas* takings apply only to real property.

Maryland's statutory ban did not fall within the first category (*Loretto*) because the Maryland statute "does not require owners of rapid fire trigger activators to turn them over to the Government **or to a third party**." *Maryland Shall Issue*, 963 F.3d at 366 (emphasis added).

Unlike the statute at issue in *Maryland Shall Issue*, Baltimore City's ordinance clearly falls into the first category (*Loretto*). Baltimore City permits a third-party—the landlord—to instantly appropriate a tenant's property. As the district court recognized, the ordinance "allows landlords to take possession of tenants' valuable personal property for their own use without any regard to the tenants' actual intent to abandon the property." JA72. In fact, the City designed the ordinance to *encourage* landlords to take possession of their tenants' valuable property. So long as landlords do not litter public streets, the landlords are free to do whatever they want with their tenants' property once it becomes theirs.

Thus, this Court's delineation of regulatory per se takings makes clear that the Todmans have stated a takings claim. This is not a case where tenants' property is rendered economically worthless as a result of a regulation. Rather, it is a case about direct appropriation by third parties through regulation. It is irrelevant that the City is not the landlord in this case. Indeed, the Fifth Amendment is further offended given that the ordinance compels tenants to turn their property over to third parties. After all, *Horne* would have come out the same way had raisin growers been forced to hand over shares of their raisin crops to their competitors, their customers, or their landlords.

## C. The District Court's Amended Analysis Was Also Wrong—Authorization of a Taking Is Enough.

The district court revised its analysis after the Todmans moved to reconsider. The court held that the Todmans' taking claim failed because the Abandonment Ordinance merely authorized the taking, it did not compel it.

It is true that there is no such thing as a negligent taking. *St. Bernard Par. Gov't* v. *United States*, 887 F.3d 1354, 1360 (Fed. Cir. 2018). Rather, "takings liability arises from an 'authorized activity.'" *Id.* But contrary to

the district court's analysis, a taking may be the "incidental" consequence of otherwise authorized activity.

For instance, in *United States* v. *Causby*, 328 U.S. 256 (1946), the Court considered whether the government had taken plaintiffs' land by conducting military flights over that land at low altitudes. Obviously, the military did not fly over the plaintiffs' land for the purpose of destroying the plaintiffs' property interests. In fact, the government argued that a taking had not occurred because, "at most there was merely incidental damage occurring as a consequence of authorized air navigation." *Id.* at 260. Yet the Court rejected that argument and found that a taking had occurred. The Court explained that "[i]t is the owner's loss, not the taker's gain, which is the measure of the value of the property taken." *Id.* at 261.

Under the district court's analysis, the plaintiffs in *Causby* should have lost. The district court perceived a difference between "a law that deprives individuals of their personal property by mandating that they turn over the property to a third-party and a law that essentially permits a third-party to take possession of [that property]." JA83. But the district court did not cite any case for that proposition. And in *Causby*, the government authorized a glide path that permitted the taking to occur.

The government did not enact a law saying that property owners within that glide path must give up their property rights to the government. In short, the district court's analysis is at odds with long established takings law.

The district court was also wrong when it concluded that "[t]he ordinance does not require or otherwise compel tenants to turn over their property to a landlord," and it was wrong when it surmised that the ordinance does not "instantly transfer property interest from tenant to landlord." JA83.

The City explained during discovery that the Abandonment Ordinance "has to work in a way that it transfers possession . . . to the landlord of whatever the property is that makes up the abandoned eviction chattels. . . ." JA148. Possession, the City explained, "shifts ***immediately*** over to the landlord at the execution of the warrant" and the tenant's belongings become, at that moment in time, "the property owner's property." JA211-212 (emphasis added). Abandonment, therefore, is a legal device intended by the City to transfer ownership of the tenants' property to the landlord—and to do so instantaneously. JA132.

## Conclusion

For these reasons, Appellees Marshall and Tiffany Todman respectfully request that this Court affirm the district court's grant of summary judgment in favor of the Todmans as to liability on their § 1983 claim and affirm the district court's denial of summary judgment as to the City. Even if the Court does not find that the Abandonment Ordinance violates the due process clause of the Fourteenth Amendment, the Court should find that it violates the takings clause of the Fifth Amendment. In the alternative, the Court should remand to the district court the issue of whether the Abandonment Ordinance violated the Todmans' substantive due process rights and whether the ordinance violates due process in all applications, not just as applied to the Todmans in this case.

Dated: October 10, 2023                    Respectfully Submitted,

*/s/ Conor B. O'Croinin*
Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
410.332.0444
cocroinin@zuckerman.com

Joseph S. Mack
The Law Offices of Joseph S.
Mack
PO Box 65066
Baltimore, MD 21209
joseph@macklawonline.com
(443) 423-0464

## Statement Concerning Oral Argument

Plaintiffs-Appellees and Cross-Appellants believe that this Court can affirm the district court's judgment without argument, but would welcome it nonetheless.

**Certificate of Compliance**

In conformance with Local Rule 28.1(e)(2(B) and Rule 32(f) of the Federal Rules of Appellate Procedure, this brief contains 15,299 words.

This brief complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

## Certificate of Service

I hereby certify that on October 10, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

October 10, 2023

/s/ Conor B. O'Croinin

Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
410.332.0444
cocroinin@zuckerman.com