23-1201(L) / 23-1277

_____

# United States Court of Appeals for The Fourth Circuit

_____

Tiffany and Marshall Todman,
*Plaintiffs-Appellees and Cross-Appellants*

v.

The Mayor and City Council of Baltimore,
*Defendant-Appellant and Cross-Appellee*

_____

Appeal from the United States District Court
For the District of Maryland
No. 1:19-cv-03296, Judge Deborah L. Boardman

_____

## Cross-Appellants' Reply Brief

Joseph S. Mack
THE LAW OFFICES OF JOSEPH S. MACK
P.O. Box 65066
Baltimore, Maryland 21209
joseph@macklawonline.com
(443) 423-0464

Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
cocroinin@zuckerman.com
(410) 949-1169

*Attorneys for Plaintiffs-Cross-Appellants*

# Table of Contents

Argument ....................................................................................... 1

I.  The City Does Not Defend The District Court's Reasoning. .......... 1

II.  The City's Manipulation and Distortion of the Concept of Abandonment Amounts to a Taking. ............................................... 2

III.  The City's Contention That The Todmans Could Have Avoided The Taking Is Legally and Factually Incorrect. ............................. 7

   A. A Theoretical Chance To Avoid A Forfeiture, Does Not Defeat A Takings Claim. ...................................................................... 7

   B. *Nelson* v. *City of New York* Is Inapplicable. ................................ 11

IV.  The Availability of Alternative Methods Is Irrelevant. ............... 15

Conclusion ................................................................................... 18

Certificate of Compliance .............................................................. 19

Certificate of Service ..................................................................... 20

# Table of Authorities

## CASES

*111 Scherr Lane, LLC* v. *Triangle Gen. Contracting, Inc.*,
233 Md. App. 214, 163 A.3d 248 (2017) ................................................ 16

*Armstrong* v. *United States*,
364 U.S. 40 (1960), *abrogated on other grounds*, *Lingle* v. *Chevron U.S.A. Inc.*, 544 U.S. 528 (2005) .......................................................... 17

*Cedar Point Nursery* v. *Hassid*,
141 S. Ct. 2063 (2021) ................................................................ 1, 10, 18

*Cerajeski* v. *Zoeller*,
735 F.3d 577 (7th Cir. 2013) ............................................................. 2, 4

*Coleman through Bunn* v. *D.C.*,
70 F. Supp. 3d 58 (D.D.C. 2014) ............................................................ 12

*Hall* v. *Meisner*,
51 F.4th 185 (6th Cir. 2022) ........................................................ 6, 7, 12

*Horne* v. *Department of Agriculture*,
576 U.S. 350 (2015) ................................................................... 7, 8, 17

*Kirtsaeng* v. *John Wiley & Sons, Inc.*,
568 U.S. 519 (2013) ......................................................................... 13

*Knick* v. *Township of Scott, Pennsylvania*,
139 S. Ct. 2162 (2019) .................................................................. 10, 11

*Koontz* v. *St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013) ......................................................................... 17

*Loretto* v. *Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) .......................................................................... 8

*McCulloch* v. *Maryland*,
4 Wheat. 316, 4 L.Ed. 579 (1819) ........................................................... 17

*Nelson* v. *City of New York*,
352 U.S. 103 (1956) ............................................... 9, 11, 12, 13, 14, 15

*Nickens* v. *Mount Vernon Realty Grp., LLC,*
    429 Md. 53, 54 A.3d 742 (2012), *separate holding superseded by
    statute,* 2013 Md. Laws ch. 515 § 2, at 4690-91 ................................... 16

*Olson* v. *United States,*
    292 U.S. 246 (1934) .............................................................................. 10

*Pennsylvania Coal Co.* v. *Mahon,*
    260 U.S. 393 (1922) .............................................................................. 17

*Phillips* v. *Washington Legal Foundation,*
    524 U.S. 156 (1998) ............................................................................. 2, 7

*Schneider* v. *California Department of Corrections,*
    151 F.3d 1194 (9th Cir. 1998) ................................................................ 2

*Texaco, Inc.* v. *Short,*
    454 U.S. 516 (1982) ..................................................................... 3, 4, 5, 6

*Tyler* v. *Hennepin County,*
    26 F.4th 789 (8th Cir. 2022) ................................................................... 9

*Tyler* v. *Hennepin County,*
    598 U.S. 631 (2023) ................................................................... 3, 4, 5, 10

*United States* v. *Causby,*
    328 U.S. 256 (1946) ................................................................................ 2

*United States* v. *Lawton,*
    110 U.S. 146 (1884) .............................................................................. 12

*Webb's Fabulous Pharmacies, Inc.* v. *Beckwith,*
    449 U.S. 155 (1980) ............................................................................. 2, 7

*Zissu* v. *IH2 Prop. Illinois, L.P.,*
    157 F. Supp. 3d 797 (N.D. Ill. 2016) ................................................... 16

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (7th ed. 1999) ................................................ 10

**TREATISES**

Treanor, William Michael, *The Original Understanding of the Takings Clause and the Political Process*, 95 COLUM. L. REV. 782, 835-36 (1995) ...................................................5

**Argument**

"[W]hen the government . . . appropriat[es] private property for itself or a third party," the result is the application of "a simple, per se rule: The government must pay for what it takes." *Cedar Point Nursery* v. *Hassid*, 141 S. Ct. 2063, 2071 (2021).

## I. The City Does Not Defend The District Court's Reasoning.

The Mayor & City Council of Baltimore ("the City") does not dispute that it enacted the Abandonment Ordinance as a mechanism to appropriate the private property of tenants and transfer that property to third-party landlords. And as it relates to this case, the City does not dispute that it took $36,000 worth of personal property from the Todmans, transferred it to the Todmans' landlord, never gave the Todmans an avenue to *recover* their property, and failed to compensate the Todmans for the loss of nearly everything they owned.

Nor does the City defend the reasoning underlying the district court's dismissal of the Todmans' takings claim. The district court dismissed the Todmans' takings claim because, according to that court, the City's ordinance merely permitted the Todmans' landlord to take $36,000 worth of their personal property, but did not mandate it. JA83. In their opening brief, the Todmans explained that the district court's reasoning conflicted

1

with the Supreme Court's takings jurisprudence, as illustrated by cases such as *United States* v. *Causby*, 328 U.S. 256 (1946)—where military flights over a property adjacent to a runway could result in a taking notwithstanding a federal law giving the military complete sovereignty over the relevant airspace. Todman Br. 74. The City does not cite, let alone distinguish, *Causby*. Nor does the City otherwise attempt to defend the district court's untenable distinction between a legislatively *permitted* forfeiture and a legislatively *mandated* forfeiture.

The City's concessions are—on their own—sufficient reasons to reverse the district court's dismissal of the Todmans' takings claim.

## II. The City's Manipulation and Distortion of the Concept of Abandonment Amounts to a Taking.

The Fifth Amendment prohibits a government from avoiding its obligation to pay just compensation by redefining a traditional property right out of existence. *Phillips* v. *Washington Legal Foundation*, 524 U.S. 156, 167 (1998); *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 164 (1980); *Cerajeski* v. *Zoeller*, 735 F.3d 577, 582 (7th Cir. 2013) (Posner, J.); *Schneider* v. *California Department of Corrections*, 151 F.3d 1194, 1199-1200 (9th Cir. 1998). That prohibition extends to attempts to redefine the traditional concept of abandonment—whether by legislative

enactment or by post-forfeiture justification. *Tyler* v. *Hennepin County*, 598 U.S. 631, 647 (2023).

In *Tyler*, a Minnesota county took the plaintiff's home for her failure to pay real property taxes, sold the home, satisfied the tax bill, but then refused to return the surplus value. The county argued that by failing to abide by the "reasonable condition" of paying taxes, "the owner can be considered to have abandoned her property and is therefore not entitled to any compensation for its taking." *Id.* at 646.

Like the City's contention that its Abandonment Ordinance is "a very minor, and eminently reasonable imposition on private property rights," City Br. 17, the County in *Tyler* contended that deeming a home abandoned based on the owner's failure to pay taxes was "just another example in the long tradition of States taking title to abandoned property." 598 U.S. at 646. And like the City here, the County relied on the Supreme Court's decision in *Texaco, Inc.* v. *Short*, 454 U.S. 516 (1982). The unanimous Court in *Tyler* rejected the county's reliance on *Texaco*. This Court should reject the City's attempt to reargue the same point.

Unlike this case, *Texaco* involved a bona fide abandonment law that bears no resemblance to the City's Abandonment Ordinance. *Texaco* concerned an Indiana statute that deemed mineral interests to be abandoned when the owners showed no intention to retain their interests for a period of 20 years. *Id.* at 518-19. Abandonment meant that the subsurface mineral interests reverted to the surface landowner. The *Texaco* Court found that the statute did not amount to a taking because the State "has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a *present intention to retain the interest.*" *Id.* at 526 (emphasis added).

The Court in *Tyler* rejected the County's argument that the plaintiff had abandoned her home by failing to pay taxes. "Abandonment," the Court explained, requires "the owner's failure to make *any* use of the property—**and for a lengthy period of time**. . . ." *Tyler*, 598 U.S. at 647 (cleaned up and emphasis added). *See also Cerajeski*, 735 F.3d at 582 (explaining that deeming property abandoned after shorter periods of time triggers due process rights). Minnesota's forfeiture scheme, by contrast, had no similar time-period and accorded "no weight to the

taxpayer's use of the property." *Tyler*, 598 U.S. at 647. The owner could live in her home right up until the moment the government took it. *Id.*

This case is controlled by *Tyler*, not *Texaco*. The City's misconception of abandonment is almost identical to Hennepin County's. Under the City's Abandonment Ordinance, the owner of personal property can use that property right up until the moment of transfer to the landlord, when the property is suddenly deemed abandoned. That is not, as the City puts it, "a modest modification to Maryland's common law standard of abandonment." City Br. 18. Nor is it an alteration of "one narrow category of property." City Br. 16. Rather, the Abandonment Ordinance represents a total distortion and manipulation of a tenant's interests in all her personal property—from the ashes of loved ones on the mantle, to the zester in the kitchen drawer. *See* JA20, JA31. The fact that the Abandonment Ordinance applies to personal property, rather than real property does not render the City's action either "modest" or "reasonable." After all, the protection of personal property was a core concern of the framers of the Fifth Amendment. William Michael Treanor, *The Original Understanding of the Takings Clause and the Political Process*, 95 COLUM. L. REV. 782, 835-36 (1995).

And unlike the law at issue in *Texaco*—which was designed to spur the productive use of minerals which had fallen into a prolonged period of nonuse—the City designed its ordinance to transfer property from tenants to landlords, no matter the tenants' intentions to retain their property. JA134-135. Here the landlord's real property remained vacant following the eviction, JA30, and the Abandonment Ordinance is so radical that it reaches personal property well outside any traditional form of abandonment, such as a car parked on a private street or parking lot, if the street or parking lot is privately owned by the landlord, JA137-138, or a friend's dog present at the moment of eviction, JA203. Indeed, the City contends that the Todmans should be deemed to have abandoned their property for good even though it acknowledges that the Todmans never intended to abandon their property at all. City Opening Br. 41.

Rather than enact a traditional abandonment law, the City has attempted to write a core property interest out of existence. "But the Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the state wished to take." *Hall* v. *Meisner*, 51 F.4th 185, 190 (6th Cir. 2022). Because the government "may not sidestep the Takings Clause by disavowing

traditional property interests," or by otherwise redefining property rights, *Phillips*, 524 U.S. at 167; *Webb's Fabulous Pharmacies*, 449 U.S. at 164, the City must pay just compensation to the Todmans for taking their personal property.

In sum, far from effecting a "modest modification" of property rights, the City distorted and manipulated a well-defined concept of property law to justify wholesale transfers of personal property to third parties. "In some legal precincts that sort of behavior is called theft." *Hall*, 51 F.4th at 196 (Kethledge, J., internal citation omitted).

## III. The City's Contention That The Todmans Could Have Avoided The Taking Is Legally and Factually Incorrect.

### A. A Theoretical Chance To Avoid A Forfeiture, Does Not Defeat A Takings Claim.

The City argues that there can be no taking because the Todmans could have secured all their things by removing them before they became the property of the landlord. City Br. 19. But the Supreme Court has made clear in cases like *Horne* v. *Department of Agriculture*, 576 U.S. 350 (2015) that the mere opportunity or chance to avoid a government-mandated forfeiture does not defeat a takings claim. In *Horne*, raisin growers challenged a law requiring them to hand over a portion of their

crops to the government without compensation. *Id.* at 355. The Court acknowledged that the raisin growers easily could have avoided the forfeiture by opting to "sell their raisin-variety grapes as table grapes or for use in juice or wine." *Id.* at 365. But the Court held that the government effected a taking nonetheless. *Id.* at 364-65. *Accord Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 n.17 (1982) (a taking even though landlord could avoid the taking).

The City's suggestion that it can escape takings liability because the Todmans could have moved their property before the moment of eviction is wrong. Whatever opinion the City might hold of residents facing an eviction, City Br. 11, 20, "people still do not expect their property, real or personal, to be actually occupied or taken away," *Horne,* 576 U.S. at 361. As a factual matter, the Todmans did not have notice of the eviction date and had no opportunity to take action. JA27-28. The transcript of the Todmans' eviction proceeding belies the City's contention that the landlord/tenant court had ordered the Todmans out of the leased premises before the sheriff-executed eviction. JA44-54; JA27. And the record in this case makes clear that the Todmans rushed home from work as soon as they learned of the surprise eviction. JA29.

The City is wrong as a legal matter as well. The Eighth Circuit made a similar error in *Tyler*. *Tyler* v. *Hennepin County*, 26 F.4th 789, 793 (8th Cir. 2022). Relying on *Nelson* v. *City of New York*, 352 U.S. 103 (1956), the Court of Appeals held in *Tyler* that there could be no taking because the plaintiff had multiple opportunities to avoid the forfeiture of her home. The tax sale statute in *Nelson* provided an alternative process by which the homeowner could recover the surplus value from the government. The Eighth Circuit misinterpreted *Nelson* to mean that opportunities to avoid a forfeiture negate a takings claim. *Tyler,* 26 F.4th at 794.

The Eighth Circuit pointed to multiple chances for the plaintiff to avoid forfeiture. In the view of that court, the plaintiff "could have recovered the surplus by redeeming the property and selling the condominium, or by confessing judgment, arranging a payment plan for the taxes due, and then selling the property." *Tyler*, 26 F.4th at 793.

In reversing, the Supreme Court explained that the presence of pre-forfeiture opportunities to avoid a taking are irrelevant. Rather, to avoid a taking of the surplus value in the tax-sale/foreclosure context, there must be an opportunity *after* the deprivation to *recover* the excess value.

(The Court construed the statute in *Nelson* as providing an opportunity for property owners to recover their surplus value in the 20-day window between forfeiture and sale). As the Court put it, "requiring a taxpayer to sell her house to avoid a taking is not the same as providing her an opportunity to **<u>recover</u> the excess value of her house <u>once the State has sold it</u>**." *Tyler*, 598 U.S. at 644-45 (emphasis added).

"Recover" means to "regain" possession. *See recover*, BLACK'S LAW DICTIONARY (7th ed. 1999). So only a post-deprivation opportunity to regain surplus value could ever be relevant in the tax sale context. After all, it is the moment of the taking that matters. Once the government takes property for itself or a third party, the government's categorical obligation to pay is triggered. *Cedar Point*, 141 S. Ct. at 2071. It is at *that moment* when just compensation is owed. *Knick* v. *Township of Scott*, 139 S. Ct. 2162, 2170 (2019) ("[N]o matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it."); *Olson* v. *United States*, 292 U.S. 246, 255 (1934) (explaining that the Takings Clause requires just compensation to be paid "at the time of the taking").

The *Tyler* Court distinguished *Nelson*. It did not endorse *Nelson* or announce a rule that applies outside of the unique circumstances of a tax-sale. But even if this Court were to apply *Nelson* outside of the tax-sale context, there is no dispute that the City never afforded the Todmans an opportunity to *recover* their property. Once the locks were changed on the leased premises, their $36,000 worth of personal property became—immediately and irrevocably—the property of a third party. At that moment, a compensable taking occurred.

## B. *Nelson* v. *City of New York* Is Inapplicable.

*Nelson* does not rescue the City for additional reasons. To start, the City's interpretation of *Nelson* conflicts directly with the Supreme Court's more recent decision in *Knick*, 139 S. Ct. at 2170. In *Knick*, the Court made clear that the availability of a state-court procedure that might result in compensation is no substitute for just compensation under the Takings Clause. After all, "[t]he Clause provides: '[N]or shall private property be taken for public use, without just compensation.' It does not say: 'Nor shall private property be taken for public use, without an available procedure that will result in compensation.'" *Id*. *Nelson* rejected a takings claim because the plaintiff defaulted in the foreclosure

proceeding by failing to invoke his right to recover the surplus value of his confiscated property. The homeowner in *Nelson* defaulted long after the Supreme Court had recognized that seizing the entire surplus value of a home in a forced sale amounts to a taking. *Coleman through Bunn* v. *D.C.*, 70 F. Supp. 3d 58, 77-78 (D.D.C. 2014) (citing *United States* v. *Lawton*, 110 U.S. 146 (1884)).

In that regard, as the Sixth Circuit has recognized, *Nelson* "hardly disavowed more than two centuries of Anglo-American property law; the case was about process, not substantive property rights." *Hall*, 51 F.4th at 195. As a result of a bookkeeper's negligence, the property owner failed to pay water bills for two parcels. New York City instituted foreclosure proceedings on both. The relevant statute allowed for the plaintiff to trigger a public foreclosure sale that would have permitted the plaintiff-taxpayer to recover the equity left after the water bills were satisfied. But the *same* hapless bookkeeper defaulted in the foreclosure proceeding by failing to elect that process. *Nelson*, 352 U.S. at 105-07.

Before the Supreme Court, the taxpayer asserted a due process challenge and didn't raise a takings argument until his reply. The Court

refuted the taxpayer's counterargument by pointing to the procedural default under the tax-sale statute. *Id.* at 109-110.

*Nelson*, therefore, stands for nothing more than the proposition that if a taxpayer can recover her surplus value merely by asking for it, the government has not violated the Takings Clause if it retains the surplus when she hasn't. And that proposition was expressed in a rebuttal to a counterargument—one raised for the first time in reply and not fully briefed. *See Kirtsaeng* v. *John Wiley & Sons, Inc.*, 568 U.S. 519, 548 (2013) (explaining the diminished value of propositions that were not "fully debated").

The Todmans had no comparable opportunity to raise any issues concerning their intent to retain their personal possessions during the eviction proceeding. As the district judge in that proceeding correctly recognized, the scope of the eviction proceeding is highly circumscribed: it involves only possession of the leased property. JA44. As the State district judge explained: "if there are other issues that you would try to raise, they're not relevant to this situation." JA44. So the Todmans' intent to retain their property interests in their personal property was

excluded from the eviction proceeding. That intent is not even in dispute in this case.

In light of the stark differences between the tax-sale proceeding in *Nelson* and the eviction proceeding here, *Nelson's* unique procedural exception could only have relevance to this case if several features of the New York statute and the case were different. An analogous precedent would look like this: the New York State foreclosure statute and common law principles allowed the taxpayer to recover any surplus following the tax sale. Nothing in the New York State statute required or even called for the taxpayer to indicate her desire to retain that surplus. New York City passes an ordinance that says, "immediately upon a foreclosure sale (when the gavel strikes), a taxpayer is deemed to have abandoned any surplus equity." Because there was no opportunity or need in the foreclosure proceeding to elect to keep the surplus, a taking has occurred. The only self-help methods the taxpayer has in that circumstance would be to exercise one of the options delineated by the Eighth Circuit: sell the property first in a private sale or redeem the property by paying the water bills. But the availability of those options—as shown above— cannot defeat a takings claims against the City.

In sum, *Nelson's* procedural holding is of no help to the City.

## IV. The Availability of Alternative Methods Is Irrelevant.

The City posits that if it hadn't appropriated the Todmans' personal property and instead allowed for the typical process of placing the Todmans' belongings on the sidewalk, thereby creating the risk of theft or inadvertent loss, a compensable taking may still have occurred. City Br. 21. The City's "we-needed-to-take-the-Todmans'-property-before-someone-else-did-argument" is misguided and irrelevant.

To begin with, the Todmans rushed home as soon as they learned of the eviction. JA29. And Mrs. Todmans' mother was present at the home to watch over anything placed on the street during the brief time between eviction and the Todmans' return. JA29. Had the City not destroyed the Todmans' property interest in their worldly possessions, the Todmans would still have retained the legal ability to exclude others from their possessions. In short, if not for the City's forced abandonment, the Todmans would be in a far better position. And there is nothing in the record to suggest that the Todmans would have lost their things anyway. The City is wrong on the facts.

The City is also wrong on the law. As the Todmans explained in their opening brief, there can be no negligent taking. Todman Br. 73. While it is true, on the one hand, that tenants whose personal property is handled unreasonably during an eviction, may have a common law claims for replevin, *111 Scherr Lane, LLC* v. *Triangle Gen. Contracting, Inc.*, 233 Md. App. 214, 236-37, 163 A.3d 248, 261 (2017), conversion, *Nickens* v. *Mount Vernon Realty Grp., LLC*, 429 Md. 53, 79, 54 A.3d 742, 758 (2012), *separate holding superseded by statute*, 2013 Md. Laws ch. 515 § 2, at 4690-91, or other torts, *Zissu* v. *IH2 Prop. Illinois, L.P.*, 157 F. Supp. 3d 797, 799 (N.D. Ill. 2016), government takings liability, on the other hand, is exceedingly unlikely in a typical eviction. That is because directing a landlord to remove property from the leased premises—while preserving the tenants' property rights—is a far cry from transferring possession and ownership to the landlord so that the landlord can treat the things as his own.

Even putting all of that to the side, it may be true that placing property on a sidewalk could—in some circumstances—lead to the same economic impact on tenants. "The Constitution, however, is concerned with means as well as ends. The Government has broad powers, but the

means it uses to achieve its ends must be 'consist[ent] with the letter and spirit of the constitution.'" *Horne*, 576 U.S. at 362 (quoting *McCulloch* v. *Maryland*, 4 Wheat. 316, 421, 4 L.Ed. 579 (1819)). *See also Koontz* v. *St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013) (explaining that the Court has "repeatedly found takings where the government, by confiscating financial obligations, achieved a result that could have been obtained by imposing a tax.").

The City's professed desire for clean streets is not enough to warrant ignoring the Fifth Amendment or imposing on the Todmans the unique burden of losing all their worldly possessions, when those burdens, "in all fairness and justice, should be borne by the public as a whole." *Armstrong* v. *United States*, 364 U.S. 40, 49 (1960). "As Justice Holmes noted, 'a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way." *Horne*, 576 U.S. at 362 (quoting *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 416 (1922)).

The City has chosen an atypical method to deal with the personal property of tenants during an eviction: to physically appropriate that property for third-party landlords. The City's decision triggers "a simple,

per se rule: The government must pay for what it takes." *Cedar Point Nursery*, 141 S. Ct. at 2071. The wisdom and practicality of alternative methods are irrelevant.

## Conclusion

For these reasons, and those stated by the Todmans in their opening brief, the Todmans have stated a valid takings claim.

Dated: January 26, 2024

Respectfully Submitted,

*/s/ Conor B. O'Croinin*
Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
410.332.0444
cocroinin@zuckerman.com

Joseph S. Mack
The Law Offices of Joseph S.
Mack
PO Box 65066
Baltimore, MD 21209
joseph@macklawonline.com
(443) 423-0464

## Certificate of Compliance

In conformance with Local Rule 28.1(e)(2)(C) and Rule 32(f) of the Federal Rules of Appellate Procedure, this brief contains 3,572 words.

This brief complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

January 26, 2024

/s/ Conor B. O'Croinin

Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
410.332.0444
cocroinin@zuckerman.com

## Certificate of Service

I certify that on January 26, 2024, this brief was served on all parties or their counsel of record through the CM/ECF system.

January 26, 2024

*/s/ Conor B. O'Croinin*
Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
410.332.0444
cocroinin@zuckerman.com